Orlett et al., Appellants, v.
Suburban Propane et al.,
Appellees.

(No. CA89-05-028—Decided
December 11, 1989.)

*James A. Whitaker,* for appellants.
*Rendigs, Fry, Kiely & Dennis,
Ralph F. Mitchell* and *John M. Hands,*
for appellees.

Koehler, J. This cause is before the court on appeal from a motion for summary judgment granted in favor of defendants-appellees, Suburban Propane, Suburban Propane Gas Corporation, and Texgas Corporation (hereinafter referred to as "Texgas").

The facts indicate that on March 31, 1986, plaintiffs-appellants, Daniel J. Orlett and Bonnie Orlett, entered into a "liquid propane gas purchase agreement and equipment lease," whereby Texgas agreed to lease three three-hundred-pound gas tanks together with "all the LP gas to be stored and used in the above equipment." Originally, an automatic-fill service method of delivery was set up in order to avoid a total depletion of gas prior to the placing of another order for delivery; however, on November 3, 1986, the automatic-fill service was discontinued apparently due to the Orletts' nonpayment for delivered gas. Therefore, Texgas implemented a cash-on-demand delivery service requiring payment within thirty days. This delivery arrangement remained effective until February 18, 1987 when the Orletts reinstated the automatic-fill service.

On February 18, 1987, the Orletts awakened as a result of a strong gas odor permeating their mobile home. The propane gas tank had run empty and, due to a lack of pressure, the shut-off valve could not be closed. Therefore, propane gas leaked into the

Orletts' home. The Orletts brought suit against Texgas for injuries sustained as a result of the negligence of Texgas in failing to properly inspect and maintain its gas tanks pursuant to the purchase agreement and equipment lease. The complaint alleged that the failure of Texgas to keep the tanks full as per agreement resulted in leaking propane which thereby caused injuries to Bonnie Orlett.

Texgas moved for summary judgment on March 2, 1989. The court below granted the motion in favor of Texgas on May 8, 1989, maintaining that the exculpatory language of the purchase agreement and equipment lease exempted Texgas from the consequences of any negligence it may have in connection with the Orletts. The Orletts subsequently filed this instant appeal setting forth the following assignment of error:

"The trial court erred to the prejudice of the appellants in resolving the issue of the exculpatory clause in the LP Gas Purchase Agreement and Equipment Lease between plaintiffs and defendants, barring plaintiffs from recovery and granting summary judgment in favor of defendants."

The Orletts, in their assigned error, insist that one who is engaged in the business of supplying propane cannot relieve itself by contract from liability in negligence. We agree.

The purchase agreement and equipment lease agreed to and executed by the Orletts provided that:

*"It is understood and agreed that TEXGAS will not be responsible for damage to the CUSTOMER's property or for the death or personal injury of the CUSTOMER or of any third party arising out of the storage or use of LP-Gas, or the use, operation, maintenance, or repair of any equipment or appliance storing or utilizing LP-Gas or arising out of the presence of a TEXGAS representative on or around* the CUSTOMER's property for the purposes of carrying out the provisions of this agreement *unless the damage to property or death or personal injury was caused by the gross negligence or the wanton and willful act of TEXGAS.* The CUSTOMER agrees to indemnify and excuse TEXGAS from all liability, loss, damage, or expenses sustained by any person as a result of the installation, removal, use, servicing, repair, maintenance, filling, refilling, or any other activity related to this lease, the installed equipment, or for any sale, *unless the liability, loss, damage or expenses were caused by the gross negligence or wanton and willful act of TEXGAS.* TEXGAS will not be liable for any loss or damage sustained by the CUSTOMER as a result of the CUSTOMER's running out of LP-Gas." (Emphasis added.)

It is this exculpatory clause which purports to relieve Texgas of all liability in negligence that the Orletts find objectionable as against public policy.

Although attempts to excuse liability for negligence by contract are disfavored in the law, absent "unconscionability" or vague and ambiguous language, such limiting or exculpatory provisions will be upheld. Generally, a contract evading liability for negligence will be enforced (1) when the contracting parties stand in roughly equal bargaining positions, or (2) even if great disparity exists in the relative positions of the contracting parties, when nonexculpatory contract options are provided for a greater consideration, instead of accepting the risk of the superior party's negligence. *Motorists Mut. Ins. Co.* v. *Jones* (1966), 9 Ohio Misc. 113, 115, 38 O.O. 2d 154, 156, 223 N.E. 2d 381, 383.

The Orletts contend that Texgas's superior bargaining position renders the exculpatory provision in the contract null and void. Counsel has further indicated that Texgas should

be considered a public or quasi-public utility charged with a duty of public service.

In those cases where there is little or no disparity of bargaining power between the parties, contracts limiting liability for negligence will be upheld on a theory of freedom of contract. *Mansfield Mut. Ins. Co.* v. *Cleveland, Cincinnati, Chicago & St. Louis RR. Co.* (1906), 74 Ohio St. 30, 77 N.E. 269. Ohio courts have held the concept of "freedom of .contract" to be fundamental to our society, and, absent some overwhelming public policy, will not disrupt the allocation of risk embodied in the contractual relationship. *Royal Indemn. Co.* v. *Baker Protective Services, Inc.* (1986), 33 Ohio App. 3d 184, 515 N.E. 2d 5.

In the case *sub judice,* Texgas sought to insulate itself from its own negligence through a contractual waiver executed by the Orletts in the purchase agreement and equipment lease. We find that such a clause is "unconscionable" due to its inequitable result.

"Unconscionability" is not a concept at all, but instead a determination made in light of a variety of factors. White & Summers, Uniform Commercial Code (3 Ed. 1988) 203-204, Section 4-3. It is the sheer harshness of contractual terms together with unequal bargaining positions which renders certain consumer contracts suspect and worthy of judicial revision.

In *Williams* v. *Walker-Thomas Furniture Co.* (C.A.D.C. 1965), 350 F. 2d 445, 449, Judge Skelly Wright stated:

"Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. * * *"

The parties in question clearly have unequal positions of power. On the one hand, Texgas, as a supplier of liquid propane gas to the public, assumes a quasi-public function to safely furnish propane to each of its consumers. Meanwhile, the Orletts, as consumers of liquid propane for heating and cooking purposes, are dependent on Texgas for their living needs. Therefore, allowing a supplier of propane gas, such as Texgas, to insulate itself from liability as a result of its own possible negligence, is wholly oppressive and unconscionable, and against public policy.

The Orletts in this instance had little power or choice but to agree to the terms as set forth by their supplier, Texgas. Hence, the lack of a bargained-for exchange between the Orletts and Texgas, two parties who are dissimilarly situated, renders the present exculpatory clause in favor of Texgas unenforceable as a matter of law.

Generally, contracts or clauses thereof are "unconscionable" where one party has been misled as to the "basis of the bargain," where a severe imbalance in bargaining power exists, or where specific contractual terms are outrageous. *County Asphalt, Inc.* v. *Lewis Welding & Engineering Corp.* (S.D.N.Y. 1970), 323 F. Supp 1300, 1308. See, also, *Evans* v. *Graham Ford, Inc.* (1981), 2 Ohio App. 3d 435, 2 OBR 529, 24 O.O. 3d 140, 442 N.E. 2d 777.

R.C. 1302.93(C), regarding a limitation of remedy in the context of a sale of goods, provides:

"Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.

*Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable* but limitation of damages where the loss is commercial is not." (Emphasis added.)

Although the instant action is not a sale of goods in the strict sense, the above provision is applicable due to the fact that Texgas contracted to service the Orletts in connection with the sale of propane gas. Further, the legislature's intention to protect the consumer against overreaching and unscrupulous sellers mandates that the essence of R.C. 1302.93(C) be followed as applied to parallel situations as exhibited in the present case.

Accordingly, we find that the exculpatory clause which purports to insulate Texgas from its own negligence in the course of servicing its customers is void and unconscionable as a matter of law thus rendering summary judgment in its favor improper. Therefore, the Orletts' assignment of error is well-taken and is hereby sustained.

*Judgment reversed and cause remanded.*

HENDRICKSON, J., concurs.

JONES, P.J., concurs separately.

JONES, P.J., concurring separately. The exculpatory clause was unconscionable in relieving appellees of liability except in instances of gross negligence or wanton and willful acts. Appellees sold an inherently dangerous product and obviously had superior knowledge with respect to the propensities of the propane gas. Appellees are therefore liable for their *negligent* acts. Summary judgment was improper, because there were genuine issues of material fact as to appellees' negligence, including: (1) whether appellees should have installed gauges after discontinuing the "automatic fill" services; and (2) whether appellees should have warned appellants as to the dangers involved in permitting the tanks to become low in pressure. It may well be that a jury would find a lack of negligence on the part of appellees, but in any event, appellees should not be permitted to absolve themselves from liability on the basis of the exculpatory clause unilaterally inserted in the contract.