COLLINS et al., Appellants,

v.

CLICK CAMERA & VIDEO, INC., Appellee.

[Cite as *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826.]

Court of Appeals of Ohio,
Montgomery County.

No. 13571.

Decided March 24, 1993.

828

*Mark R. Chilson,* for appellants.

*Robert J. Janes,* for appellee.

WOLFF, Judge.

Leo Collins appeals from a summary judgment of the Montgomery County Court of Common Pleas granted in favor of Click Camera & Video, Inc. ("Click Camera").

The undisputed facts of this case are as follows.

On December 3, 1990, Leo Collins deposited twenty-eight reels of Super 8 movie film with Click Camera & Video, Inc. to have the images contained on the film transferred onto video tape. At least fifty percent of this film depicted images of Collins's daughter during her early childhood.

At the time he deposited his movie film, Collins signed a video transfer "order form" which detailed the type of service desired, cost of that service ($234.28), deposit required, and expected completion date. The "order form" also included a box in the lower left hand corner entitled "Customer's Receipt" which included a customer signature line and stated in extremely small print, *inter alia*, that "[the customer] acknowledge[s] and agree[s] that the video transfer center or its agents [*sic*] liability for any loss, damage or delay to material during the requested service will be limited to the replacement cost of a nonexposed roll of film or replacement. The video transfer center or its agents shall not be liable for any other loss or damage, direct, consequential, or incidental arising out of its customers use of the video transfer center facilities."

Collins was asked to sign the line under this provision, and he did so. Collins was not asked to read the limitations clause, nor were its provisions explained to him. Collins's deposition testimony indicated that he did not read the limitation clause and was not aware of its provisions, but also that he would have signed it even had he been cognizant of its content.

When Collins attempted to collect his film, Click Camera was unable to account for its whereabouts. To date, neither the original Super 8 film nor the transferred videos have been found.

On November 27, 1991, Collins filed a complaint against Click Camera alleging breach of a bailment contract and/or negligence for Click Camera's failure to

redeliver the bailed property. On June 1, 1992, Click Camera filed a motion for summary judgment, asserting that the limitation of liability clause limited Collins's recovery to replacement cost of the film deposited. The trial court granted Click Camera's motion for summary judgment.

Collins appeals from this judgment and asserts three assignments of error. Due to their substantial similarity and in the interest of judicial economy, the second and third assignments of error will be considered together.

"I. The trial court erred as a matter of law by holding that the transaction in the instant case is not a bailment."

In this assignment of error, Collins argues that the trial court erred in determining that the deposit of movie film for transfer onto video tape did not constitute a bailment transaction. We agree that such transactions are bailment contracts, but nevertheless conclude that the trial court committed no prejudicial error in this respect.

A bailment has been defined as the delivery of goods or personal property by one person to another in trust for a particular purpose, with a contract, express or implied, that the property shall be returned once the purpose has been faithfully executed. See Black's Law Dictionary (5 Ed.1979) 129; 8 Ohio Jurisprudence 3d (1978), Bailments, Section 2; 8 American Jurisprudence 2d (1980), Bailments, Section 2. Traditionally, bailment transactions have included delivery of goods or personal property which are returned to the bailor in the same form in which they were delivered. However, as a result of the increasing complexity of commercial relationships, the law of bailments has expanded to include many new and varied transactions. Among these transactions is the bailment of incomplete goods for the purpose of having the bailee manufacture, repair, or otherwise improve them. This type of bailment is recognized in 8 American Jurisprudence 2d (1980) 769–770, Bailments, Section 34, which states:

"Where property in an unmanufactured state is delivered by one person to another, on an agreement that it shall be manufactured or converted in form, or there is a delivery of chattels under an agreement that the party receiving them shall improve them by his labor or skill, whether the transaction constitutes a sale or a bailment depends generally on whether the product of the identical articles delivered is to be returned to the original owner, though in a new form. If it is to be so returned, it is a bailment * * *. The intention of the parties is the controlling factor * * *." (Footnotes omitted.)

The transaction in this case, *i.e.*, the deposit of movie film with Click Camera for transfer onto video tape, falls into both the traditional and "unmanufactured state" categories of bailment transactions. See *Morgenstern v. Eastman Kodak Co.* (N.D.Ohio 1983), 569 F.Supp. 474 (held that under Ohio law the processing of

photographic film is a bailment for services); *Carr v. Hoosier Photo Supplies, Inc.* (Ind.1982), 441 N.E.2d 450; *Mieske v. Bartell Drug Co.* (1970), 92 Wash.2d 40, 593 P.2d 1308 (determined that this type of transaction was a bailment, but that Uniform Commercial Code principles could be applied). But, see, *Bowes v. Fox–Stanley Photo Prod., Inc.* (La.App.1980), 379 So.2d 844; *Fotomat Corp. of Florida v. Chanda* (Fla.App.1985), 464 So.2d 626 (both analyzed photo development cases under the Uniform Commercial Code). When Collins delivered his reels of movie film to Click Camera, he entrusted it to copy the images contained thereon onto video tapes. After this purpose was accomplished, Click Camera was expected, and it agreed, to redeliver to him the original movie film, thereby creating a traditional bailment transaction, and to deliver to him the newly created video tapes, thereby creating a bailment of goods delivered in an unmanufactured state. Thus, the entire transaction between Collins and Click Camera is a bailment, and any consideration of this case must be guided by bailment principles.

The general and accepted rule in bailment cases is that the bailee has two basic duties to the bailor: (1) he must exercise ordinary care in safeguarding the bailed property; and (2) he must return the bailed property, or the product thereof, undamaged. If the bailee fails to redeliver the bailed property, he has breached both of these duties and is liable to the bailor, in tort and contract, for the value of the property. In order to establish a prima facie case, the bailor must prove (1) the existence of a bailment contract; (2) the delivery of the bailed property to the bailee; and (3) the failure of the bailee to redeliver the bailed property undamaged at the termination of the bailment. An inference that the bailee was negligent may be drawn from proof of this third element. *Aetna Cas. & Sur. Co. v. Woody Sander Ford, Inc.* (1969), 21 Ohio App.2d 62, 50 O.O.2d 107, 254 N.E.2d 700; *David v. Lose* (1966), 7 Ohio St.2d 97, 36 O.O.2d 81, 218 N.E.2d 442.

Once the prima facie case has been established, the bailee can only escape liability by establishing an affirmative defense, *e.g.,* that he exercised ordinary care in safeguarding the bailed property, or that the bailor accepted responsibility for its loss. See *David, supra.* It is this latter affirmative defense which Click Camera has asserted and on which the trial court focused.

Collins is correct in his assertion that the trial court did not expressly base its decision to grant summary judgment in favor of Click Camera on the principles of bailment law. In fact, the trial court expressly stated that it would not determine whether the deposit of movie film for transfer of images onto video tape constituted a bailment. Nevertheless, the trial court recognized and evaluated the question which is critical to this case, *i.e.,* whether the limitation of

liability clause contained in the order form established an affirmative defense to Collins's cause of action.

Accordingly, we conclude that the trial court's declining to consider bailment principles in its evaluation of Click Camera's motion for summary judgment, even if erroneous, did not affect the determination of the motion, and was therefore harmless.

The first assignment of error is overruled.

"II and III. The trial court erred as a matter of law in holding that the limitation of liability clause in the video transfer order form is not against public policy and is not unconscionable."

In these assignments of error, Collins contends that the trial court erred in its determination that the limitation of liability clause contained in Click Camera's order form was not void as against public policy or unenforceable due to the doctrine of unconscionability.

As a general proposition, attempts to excuse liability for negligence by contract are disfavored in the law. This is especially true in the case of bailments made in the course of a general dealing with the public. Nonetheless, absent important public policy concerns, unconscionability, or vague and ambiguous terms, limiting or exculpatory provisions will be upheld. See *Orlett v. Suburban Propane* (1989), 54 Ohio App.3d 127, 561 N.E.2d 1066; *Royal Indemn. Co. v. Baker Protective Services, Inc.* (1986), 33 Ohio App.3d 184, 515 N.E.2d 5 (held that the freedom of contract is fundamental and absent some overwhelming public policy, courts will not disrupt the allocation of risk embodied in contractual relationships); *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 8 O.O.3d 149, 375 N.E.2d 410; 8 Ohio Jurisprudence 3d (1978), Bailments, Section 49.

Because Collins does not maintain that the limitation of liability clause at issue here is in any way vague or ambiguous, we need only consider whether this clause is void as against public policy and/or unenforceable due to the doctrine of unconscionability.

In determining whether an exculpatory provision is void as against public policy, courts have considered, *inter alia,* whether the goods or services contracted for are necessary for a person's living needs; whether the supplier assumes a quasi-public function in providing the goods; whether the supplier has been granted a monopoly in providing a specific service; and whether the limitation provision is such that the customer is in a position to assent to its terms. See *Berjian, supra,* 54 Ohio St.2d at 154–157, 8 O.O.3d at 152–153, 375 N.E.2d at 414–415; *Orlett, supra,* 54 Ohio App.3d at 129, 561 N.E.2d at 1069; *Carr, supra.*

In this case, Collins does not assert, and the evidence does not establish, that Click Camera either provided a quasi-public function or was granted a monopoly in providing video transfer services. Furthermore, Collins concedes that this case does not involve essential and basic services which are necessary to his living needs. Thus, if this limitations clause violates public policy, it must do so because Collins, or indeed any customer, could not assent to its terms.

To support his contention that this limitations clause violates public policy, Collins relies on the case law established in *Agriculture Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 29 O.O. 426, 58 N.E.2d 658; *Palotto v. Hanna Parking Garage Co.* (App.1946), 46 Ohio Law Abs. 18, 68 N.E.2d 170; *American Auto Ins. Co. v. Dayton Parking Co.* (1947), 82 Ohio App. 466, 38 O.O. 94, 79 N.E.2d 687. This reliance is misplaced. All of these cases hold that parking lot companies may not limit their liability by printing limitations clauses on the back of parking tickets. These tickets are "mere token[s] for identification," and the limitation clauses they contain are mere notices to customers which can only acquire the dignity of a contract limiting liability if customers overtly assent to their terms. *American Auto, supra,* 82 Ohio App. at 468, 38 O.O. at 95, 79 N.E.2d at 688. See, also, *Carr, supra,* 441 N.E.2d at 457 (DeBruler, J., dissenting).

Thus, the main concern in these "parking lot" cases was the failure, and indeed the inability, of the customer to assent to the limitations clause prior to accepting the service of the parking lot company. Such was not the case here.

The limitations clause contained in the Click Camera order form, quoted *supra,* provides a signature line on which the customer can acknowledge his assent to its terms. Additionally, the placement of this signature line immediately below the limitations language and within the lines "boxing in" the entire limitations provisions leaves no doubt that assent is required as to the terms of the limitations clause and not required for other information contained on the order form.

Moreover, the fact that the Click Camera order form is a standardized agreement does not require that we find it to be against public policy. There are many legitimate business reasons for utilizing standard forms, *e.g.,* cost reduction, and thus such agreements are not necessarily in conflict with the public interest. *Berjian, supra,* 54 Ohio St.2d at 156, 8 O.O.3d at 153–154, 375 N.E.2d at 415–416.

For these reasons, we reject Collins's contention that this limitations clause is void as against public policy and conclude that the trial court did not err in this respect.

We turn now to Collins's contention that the Click Camera limitations clause is unenforceable due to the doctrine of unconscionability.

Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. See *Chanda, supra,* 464 So.2d at 628; *Orlett, supra,* 54 Ohio App.3d at 129, 561 N.E.2d at 1069. Unconscionability thus embodies two separate concepts: (1) unfair and unreasonable contract terms, *i.e.,* "substantive unconscionability," and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, *i.e.,* "procedural unconscionability," or, in the words of Professor Leff, "bargaining naughtiness." These two concepts create what is, in essence, a two-prong test of unconscionability. One must allege and prove a "quantum" of both prongs in order to establish that a particular contract is unconscionable. See White & Summers, Uniform Commercial Code (1988) 219, Section 4–7.

Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. See *Chanda, supra; Berjian, supra.*

Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, *e.g.,* "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question." *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268.

Applying the substantive prong of the test here, we find that the existence of limitations clauses in video transfer contracts is commercially reasonable. The charge for such services is minimal compared to the potential liability for negligence. (Here, the total charge for transferring twenty-eight reels of film onto video tape was $234.28, or $8.37 per reel, and Collins's complaint sought in excess of $25,000 in damages.) In addition to this disparity in price and claimed damages, it is also significant that, given the nature of film processing, the extent of potential liability is unpredictable because the processor is generally unaware of the content of the film when delivered and unable to replace that content should the film be lost or destroyed. In order to limit exposure to such

unpredictable liability, limitation of liability clauses have become a standard in the film processing industry. Without such clauses, film processors would have to increase the cost of their services to cover this exposure. This consideration has often been held to be a commercially reasonable one. See *Berjian, supra,* 54 Ohio St.2d at 157, 8 O.O.3d at 154, 375 N.E.2d at 416; *Chanda, supra,* 464 So.2d at 630 (citing *Aetna Cas. & Sur. Co. v. Eastman Kodak Co.* [1972], 10 U.C.C.Rep. Serv. 53, 1972 WL 20854).

Having determined that limitations clauses are, in general, commercially reasonable in photo processing contracts, we must now determine whether the terms of this particular contract are also commercially reasonable. The limitations clause states, in pertinent part, that the "video transfer center or its agents [*sic*] liability for any loss, damages * * * will be limited to the replacement cost of non-exposed roll of film or replacement." Although it is generally conceded that the cost of an unexposed roll of film is not adequate compensation for the loss of exposed film depicting many significant events in a person's life, most courts uphold limitations clauses which so limit liability. See *Chanda, Carr* and *Bowes, supra* (implicitly held limitation of liability clause valid, but found it to be invalid in that case because the limitation was not explained or otherwise brought to the customer's attention). But, see, *Mieske, supra.* Thus, limitations clauses such as this one are generally not considered unconscionable.

However, this clause does not have certain attributes that tend toward substantive unconscionability. For example, the title of the limitations clause, "Customer Receipt," is misleading. Clearly, the language limiting Click Camera's liability is not a receipt. Further, the print of the limitations clause is extremely small, and is in no way distinguished by type size, spacing, type face, or any other means from an extensive amount of nonrelated text. Finally, the clause nowhere requires Click Camera to refund the customer's deposit if it loses or otherwise destroys his film.

However, in view of the general acceptance of such clauses, and Collins's deposition testimony that he would have signed this clause even had he known its contents, we cannot say that these factors are sufficient to establish substantive unconscionability in this case.

Nor do we find that Collins has established procedural unconscionability. Collins is a Harvard graduate, with extensive business and contracting experience. He admits he saw the limitations clause, but failed to read its contents. Therefore, he did not attempt to negotiate for less onerous terms, and the record does not indicate whether he could have obtained such terms had he tried. Assuming *arguendo,* that he could have not have bargained with Click Camera to alter the terms of its limitations clause, this inability alone is insufficient to establish procedural unconscionability. See *Berjian, supra,* 54 Ohio St.2d at 157,

8 O.O.3d at 154, 375 N.E.2d at 416. There were certainly other places where Collins could have taken his film and, despite the fact that limitations clauses are standard in the film processing industry, there is no evidence that no one was willing to negotiate with Collins as to these terms. Furthermore, because the object of the bailment did not relate to one of the necessaries of life, Collins was not required, as a practical matter, to have entered into the bailment contract with anyone. He could have kept his film if he found the limitation of liability to be unacceptable.

Accordingly, we conclude that Collins did not establish either of the prongs necessary to establish unconscionability.

The second and third assignments of error are overruled.

The judgment of the Montgomery County Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRADY, P.J., and FAIN, J., concur.