JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from a judgment on a cognovit note entered by Judge Richard J. McMonagle. Appellant Classic Funding, LLC, claims the judge erred in awarding interest on the judgment at only 10% annually instead of the 24% annual rate stated in the note. Appellees Luis Burgos, LLC, and Luis Burgos, individually, claim that the judge had discretion to award the lower rate of interest upon application of equitable principles. We vacate the judgment because we find it was entered without subject matter jurisdiction.
 {¶ 2} On January 8, 2002, Classic Funding filed a complaint on the cognovit note and a confession of judgment pursuant to R.C. 2323.13. The complaint requested judgment for $78,090.77, alleging that Burgos owed a principal sum of $47,861.12, plus 24% annual interest from the date of default, alleged to be August 2, 2001, amounting to $21,324.51, and "administrative fees" amounting to $9,565.18. The complaint also sought post-judgment interest at the 24% annual rate stated in the note.[1] The judge entered judgment on the note for $78,090.77, but awarded post-judgment interest at the rate of 10% annually, rather than the 24% rate stipulated in the note. Classic Funding asserts a single assignment of error:
 {¶ 3} "The Trial Court Erred When it Disregarded the Default Rate of Interest Stated in the Subject Cognovit Note."
 {¶ 4} R.C. 1343.02 states:
 {¶ 5} "Upon all judgments, decrees, or orders, rendered on any bond, bill, note, or other instrument of writing containing stipulations for the payment of interest in accordance with section 1343.01 of the Revised Code, interest shall be computed until payment is made at the rate specified in such instrument."
 {¶ 6} Although R.C. 1343.01(A) allows a maximum interest rate of 8% annually, R.C. 1343.01(B) allows higher rates in a number of specific cases. The note states that the loan at issue was made for business purposes, and thus facially qualifies for the exception from the maximum interest rate stated in R.C. 1343.01(B)(6). Where the instrument complies with R.C. 1343.01 and 1343.02 and does not otherwise state an illegal rate of interest,[2] post-judgment interest is awarded at the rate stated in the instrument.[3]
 {¶ 7} Burgos claims the judge had discretion to apply "equitable principles" and properly reduced the interest rate because the loan terms were unconscionable. In support he cites Meadowbrook Dev. Corp. v.Roberts,[4] in which the court found that a default rate of interest in a residential lease agreement need not be applied where the lease was "between parties of unequal bargaining ability."
 {¶ 8} Burgos cannot sustain his argument here, however, because the record on appeal does not show that the agreement was unconscionable[5] or provides any other defense to enforcement of the note or any of its terms. Although he attached an affidavit and exhibits to his appellate brief, those documents are not part of the trial record and cannot be considered in this appeal.[6] Where a cognovit judgment has been taken in a party's absence, the proper method for presenting evidence in one's defense is through a Civ.R. 60(B) motion, which is construed liberally to allow such collateral attacks.[7] The record before us does not allow a finding that the agreement was unconscionable.
 {¶ 9} We can, however, overturn a cognovit judgment where the note presented does not facially support the judgment sought.[8] Where a cognovit judgment is not supported by the note relied upon, the judgment is void for lack of subject matter jurisdiction.[9]
 {¶ 10} The note, dated August 2, 2000, states a principal amount owed of $47,201.08, at 18.75% annual interest, payable in monthly installments of $737.52 beginning October 1, 2000. The monthly payment amount is sufficient to pay only the interest on the note, and the "final due date" for payment of the principal balance is March 1, 2001. Among other terms, the note also states that the loan includes "other fees" listed in a separate "settlement statement" that was not attached to the note and is not part of the record. It is unclear whether these "other fees" were included in the $47,201.08 principal amount or were to be separately assessed.
 {¶ 11} The note also states that payments are due on the first day of each month and, after five days, late fees are assessed at the rate of 10% of the amount due plus $5.00 per day. After thirty days of continued default the holder may declare the debt in default and assess 24% annual interest on the unpaid accrued balance. The note also appears to require that notice of default be sent to the debtor.
 {¶ 12} Classic Funding's complaint, filed January 8, 2002, alleged that Burgos had failed to make payments due on the note since June 12, 2001, although the complaint did not state how much Burgos had paid until that time. Paragraph four of the complaint alleged:
 {¶ 13} "There remains due Plaintiff from said Defendants on said instrument the principal sum of Forty Seven Thousand Eight Hundred Sixty One and .12/100 Dollars ($47,861.12) together with interest at [sic] thereon at 24% per annum from and after 8/2/01 in the sum of Twenty One Thousand Three Hundred Twenty-Four and .51/100 Dollars ($21,324.51) and late charges and administrative fees in the sum of Nine Thousand Five Hundred Sixty-Five and .18/100 Dollars
($9,565.18) for a total sum due Plaintiff in the sum of Seventy Eight Thousand Ninety and .77/100 Dollars
($78,090.77)." (Emphasis sic.)
 {¶ 14} Nothing in the note or the complaint explains how the principal balance increased by $660.04, nor how the 24% annual interest on the claimed principal amount, computed for the five months between August 2, 2001 and January 8, 2002, amounts to $21,324.51. That corresponds to an annual interest rate of approximately 107%. Finally, nothing in the note makes any mention of "administrative fees," and it is impossible to determine how the $9,565.18 figure was calculated.
 {¶ 15} Even if we were to accept Classic Funding's statement of the principal amount owing and its calculation of unknown "administrative fees," thereby leaving disputes over the actual amount owing to be resolved in a motion for relief from judgment, we cannot approve a judgment that on its face awards interest at a rate more than four times that considered to be criminally usurious.[10] Because the note does not facially support the $78,090.77 award, the judgment is void and the assignment of error is moot.
Judgment vacated.
It is ordered that appellee shall recover of appellant costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., AND FRANK D. CELEBREZZE, J. CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The 24% interest rate applied after default; the annual interest rate on the loan itself was 18.75%.
[2] See, e.g., R.C. 2905.21(H) (rate exceeding 25% annually is criminal usury).
[3] Capital Fund Leasing, LLC v. Garfield (1999), 135 Ohio App.3d 579,581-582, 735 N.E.2d 23.
[4] Cuyahoga App. No. 79747, 2001-Ohio-4176.
[5] Although the terms of the note raise such questions, the terms alone are insufficient to show the agreement unconscionable. See Collinsv. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834,621 N.E.2d 1294 (unconscionable agreement includes both unfavorable terms and circumstances showing unequal bargaining position).
[6] Lamar v. Marbury (1982), 69 Ohio St.2d 274, 277, 23 O.O.3d 269, 431 N.E.2d 1028.
[7] Medina Supply Co., Inc. v. Corrado (1996), 116 Ohio App.3d 847,850-851, 689 N.E.2d 600.
[8] Gunton Corp. v. Banks, Franklin App. No. 01AP-988, 2002-Ohio-2873, at ¶ 9.
[9] Id. at ¶ 12.
[10] R.C. 2905.21(H), supra. Although R.C. 1705.33 prevents a limited liability company from raising the defense of usury, the note also made Burgos personally liable, and he could raise the defense on his own behalf.