WIXOM, Appellant,

v.

UNION SAVINGS BANK, Appellee.

[Cite as *Wixom v. Union Savs. Bank,* 165 Ohio App.3d 765, 2006-Ohio-1216.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050466.

Decided March 17, 2006.

Murray & Murray Co., L.P.A., Dennis E. Murray Jr., Donna J. Evans, and James S. Timmerberg; and Hovde, Dassow & Deets, Nicholas C. Deets, for appellant.

Graydon Head & Ritchey, L.L.P., Harry J. Finke IV, for appellee.

---

Sᴙʟᴠɪᴀ S. Hᴇɴᴅᴏɴ, Judge.

{¶ 1} Plaintiff-appellant, William Wixom, has appealed from the trial court's entry of summary judgment in favor of defendant-appellee, Union Savings Bank. For the following reasons, we affirm the trial court's judgment.

## I. Background

{¶ 2} Wixom refinanced his home mortgage through Union Savings Bank: more specifically, he borrowed funds to pay off an existing mortgage on his principal residence. Wixom was charged interest on his loan from the date of closing, although the proceeds of the loan were not disbursed until three days after the closing under a mandatory three-day rescission period. Wixom filed a class-action complaint alleging that this process of collecting interest during the

rescission period and prior to disbursement of the loan proceeds was unconscionable and resulted in the unjust enrichment of Union Savings Bank.

{¶ 3} The trial court granted summary judgment to Union Savings Bank. In this appeal, Wixom is advancing only his claim of unconscionability. In his sole assignment of error, Wixom argues both that Union Savings Bank's practice of charging interest was unconscionable and that Regulation Z of the Truth in Lending Act does not authorize a lending institution to engage in unconscionable lending practices. Because these arguments are related, we address them together.

## II. Standard of Review

{¶ 4} This court reviews grants of summary judgment de novo, without any deference to the trial court's decision.[1] Summary judgment may appropriately be granted when there exists no genuine issue of material fact, the movant is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion, and that conclusion is adverse to the nonmoving party.[2]

## III. Regulation Z Mandates a Rescission Period

{¶ 5} Our analysis is governed by Section 226, Title 12, C.F.R., or Regulation Z, which was promulgated to implement the Federal Truth in Lending Act. Regulation Z was designed with several objectives in mind, including to "promote the informed use of consumer credit by requiring disclosures about its terms and cost * * * [and to give] consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling."[3]

{¶ 6} To further these objectives, Regulation Z requires a three-day rescission period for all transactions in which a security interest will be acquired in the consumer's principal dwelling.[4] The purpose of the rescission period is to provide the consumer with an opportunity to rescind the transaction. Union Savings Bank was required to provide Wixom with a rescission period, and it is the interest accrued during this mandated rescission period that Wixom challenges.

{¶ 7} During the rescission period, "no money shall be disbursed other than in escrow, no services shall be performed and no materials delivered."[5] But during

---

1. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

2. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

3. Section 226.1(b), Title 12, C.F.R.

4. Section 226.23(a)(1), Title 12, C.F.R.

5. Section 226.23(c), Title 12, C.F.R.

the rescission period, a creditor may, unless prohibited by state law or otherwise, "prepare the loan check, perfect the security interest, prepare to discount or assign the contract to a third party, [and] *accrue finance charges.*"[6] Interest is one type of finance charge permitted.[7] Thus, unless otherwise prohibited, a creditor may charge interest during a rescission period before the proceeds of a loan are disbursed.

## IV. *Regulation Z Permits the Accrual of Finance Charges on All Funds During the Rescission Period*

{¶ 8} Wixom erroneously argues that finance charges, including interest, may be applied only to funds placed in escrow and that because Union Savings Bank retained possession of the funds designated for Wixom, it was not entitled to accrue finance charges. To support his argument, Wixom relies on language contained in the official staff interpretations of Regulation Z. The pertinent section of the staff interpretations initially discusses placing funds in escrow during the rescission period, stating that the "creditor may disburse loan proceeds during the rescission period in a valid escrow arrangement. The creditor may not, however, appoint the consumer as 'trustee' or 'escrow agent' and distribute funds to the consumer in that capacity during the delay period."[8] This discussion is followed by a section titled "Actions during the delay period" that contains the foregoing language concerning permissible actions during the rescission period, including the accrual of finance charges.[9] Wixom construes this latter provision as applying only to funds placed in escrow.

{¶ 9} A plain reading of the relevant language indicates that Wixom is incorrect. These two provisions concern separate issues and are not required to be read in conjunction. Wixom is attempting to create a limitation that simply does not exist. The accrual of finance charges applies to all funds, not merely to those placed in escrow, and is permissible so long as not otherwise prohibited.

## V. *Union Savings's Practice Was Not Otherwise Prohibited*

{¶ 10} Because we have concluded that Regulation Z clearly permits interest to be charged on all funds during the rescission period unless prohibited by state law or other means, we must now determine whether there exists in Ohio any law that would prohibit this practice.

---

6. (Emphasis added.) Section 226, Title 12, C.F.R., Supplement 1, Section 23(c)(3).

7. Section 226.4(b)(1), Title 12, C.F.R.

8. Section 226, Title 12, C.F.R., Supplement 1, Section 23(c)(2).

9. Id. at Section 23(c)(3).

### a. Charging Interest on a Loan During a Rescission Period Is Not Unconscionable

{¶ 11} Wixom argues that Union Savings' practice of charging interest during the rescission period was unconscionable and that because Ohio law proscribes unconscionable conduct, this practice was not permitted under Regulation Z.

■■ {¶ 12} An unconscionability analysis is essentially a two-prong test: the law or provision at issue must be both substantively and procedurally unconscionable.[10] "The primary purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise." [11] The term "oppression" concerns substantive unconscionability, while the alternate purpose of preventing unfair surprise concerns procedural unconscionability.

■ {¶ 13} Substantive unconscionability "arises from overly burdensome or punitive terms of a contract." [12] When analyzing substantive unconscionability, a court must determine whether the contract terms at issue are commercially reasonable.[13] We conclude that a contract provision allowing for interest to be charged during a rescission period is commercially reasonable and is not substantively unconscionable.

{¶ 14} Wixom was charged interest over a three-day period before he received the loan proceeds; this was not an overly burdensome period of time, nor can we conclude that it amounted to an overly burdensome amount of money.[14] And should Wixom have exercised his right to rescind, any interest charged to his account would have been returned to him. Regulation Z provides, "When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." [15] Further, the contract had already been signed and Union Savings Bank had already committed to refinancing Wixom's mort-

---

10. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294.

11. *Information Leasing Corp. v. GDR Invests., Inc.*, 152 Ohio App.3d 260, 2003-Ohio-1366, 787 N.E.2d 652, at ¶ 20, citing Calamari and Perillo, The Law of Contracts (3d Ed.1982), Sections 9–40.

12. Id., citing Calamari and Perillo, The Law of Contracts (3d Ed.1982), Sections 9–37.

13. *Click Camera & Video, Inc.*, 86 Ohio App.3d at 834, 621 N.E.2d 1294.

14. While the amount of interest involved is one pertinent factor in a determination of commercial reasonableness, it "is not in any way an influence upon the Court's view of the importance of these proceedings." See *Shelton v. Mut. S. & L. Assn., F.A.* (E.D.Mich.1990), 738 F.Supp. 1050, 1052. The record in this case is silent as to the amount of interest involved.

15. Section 226.23(d)(1), Title 12, C.F.R.

gage. It was commercially reasonable for the bank to charge interest on funds committed to and designated for Wixom.

{¶ 15} Procedural unconscionability "is implicated in the formation of a contract, when one of the parties is either overborne by a lack of equal bargaining power or otherwise unfairly or unjustly drawn into a contract."[16] Factors relevant to an analysis of procedural unconscionability include "education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question."[17] Wixom's agreement with Union Savings Bank was not procedurally unconscionable.

{¶ 16} Union Savings Bank drafted the refinancing agreement, but did disclose that interest would be charged before disbursement, and Wixom was aware of this term before he signed his contract with the bank at the closing. Wixom argues that once he learned that the bank employed this particular practice, it was not feasible for him to walk away. We disagree. Before Wixom had to permanently commit himself to the bank, he was provided with a three-day rescission period. This provided Wixom three days to look elsewhere for a bank that could provide a similar loan without the charging of interest before disbursement. Furthermore, Wixom states, both in his complaint and in his appellate brief, that other lending institutions did not charge interest before disbursement. This assertion undermines Wixom's argument. If true, it should not have been excessively onerous for him to find an alternate lender.

{¶ 17} In sum, a contract provision permitting the accrual of interest before disbursement of the loan proceeds is neither substantively nor procedurally unconscionable.

### b. Ohio Does Not Statutorily Prohibit Charging Interest Before a Loan Is Disbursed When a Mortgage Is Refinanced

{¶ 18} Wixom has not provided this court with any alternate Ohio statutory authority that would prohibit the accrual of interest before the disbursement of loan proceeds when a mortgage is refinanced, nor has our independent research located any such authority. To the contrary, Ohio's legislature has specifically contemplated this issue and has barred the accrual of predisbursement interest only in certain contexts, but not in the refinancing of a mortgage.

---

16. *GDR Invests., Inc.*, supra, at ¶ 20, citing Calamari and Perillo, The Law of Contracts (3d Ed.1982), Sections 9–38.

17. *Click Camera & Video, Inc.*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, citing *Johnson v. Mobil Oil Corp.* (E.D.Mich.1976), 415 F.Supp. 264, 268.

{¶ 19} Ohio's Second Mortgage Loan Act provides that "no registrant shall charge or collect interest prior to the date of disbursement of the loan funds to the borrower." [18]   R.C. 1321.57, concerning small loans and second mortgage loans, also provides that "interest shall not be compounded, collected, or paid in advance."

{¶ 20} These provisions indicate that the legislature did consider the accrual of interest before the disbursement of a loan.   The legislature chose to bar such accrual in certain contexts, and it is most telling that it did not enact a similar limitation concerning the accrual of interest when a mortgage is refinanced.   We conclude that the legislature purposely did not include similar restrictive language in relation to a mortgage refinancing and that accruing interest before disbursement of the loan proceeds in such a situation is not prohibited by state law.

## VI.   Conclusion

{¶ 21} The trial court correctly granted summary judgment to Union Savings Bank.   There is no applicable law or regulation that prohibits the accrual of interest before the disbursement of loan proceeds when a mortgage is refinanced, and a contract term permitting such accrual is not unconscionable.   Because there existed no genuine issue of material fact and Union Savings Bank was entitled to judgment as a matter of law, we affirm the trial court's judgment.

Judgment affirmed.

PAINTER, J., concurs.

GORMAN, P.J., dissents.

PAINTER, Judge, concurring.

{¶ 22} While many bank procedures could perhaps strike me as unconscionable, this one does not.   The bank has promised the funds to the borrower—it cannot loan the money out to others.   Even Wixom concedes that if the funds were in "escrow" for the three days, there would be no case.   I fail to see how that paperwork would really change anything.

{¶ 23} Regulation Z allows just what happened here, unless state law directs otherwise.   The Ohio General Assembly, in its wisdom, has decided not to intervene.   That is the end of the case, in my judgment.

---

18.   Ohio Adm.Code 1301:8–3–12.

GORMAN, Presiding Judge, dissenting.

{¶ 24} Something seems terribly wrong if a bank can require payment of interest by its customers on a loan before the bank disburses the money. But Union Savings Bank, by charging interest during the three-day rescission period required by Regulation Z of the Federal Truth in Lending Act, is doing exactly that to borrowers who refinance their note and mortgage. In my opinion, this practice is substantively and procedurally unconscionable.

{¶ 25} The practice of allowing the lender to accrue finance charges during the rescission period is not authorized if it is "otherwise prohibited, such as by state law." See Part 226, Supplement 1, Title 12, C.F.R. The majority correctly observes that unlike small loans and second mortgages, Ohio has no statutory prohibition against collecting interest before disbursing the loan funds. Furthermore, R.C. Chapter 1161, governing state savings banks, is silent.

{¶ 26} However, the phrase in Part 226, Supplement 1, Title 12, C.F.R. "otherwise prohibited, such as by state law" is not limited to legislative enactments. The equitable defense of unconscionability has long been recognized under Ohio's common law. See *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d at 834–835, 621 N.E.2d 1294. Surely, the object of Regulation Z is not to turn a blind eye to a banking practice that is so unconscionable that it undermines fair standards and the integrity of the banking industry.

{¶ 27} What is commercially reasonable about the bank's practice that generates two streams of interest on a single sum during the three-day rescission period? The bank's interpretation, allowing it to earn interest by investing the sum it retains for three days while simultaneously charging interest to the customer, is at odds with the purpose of the Truth in Lending Act, which is to protect consumers. See Section 226.1(b), Title 12, C.F.R. Had the bank placed the sum in a non-interest-bearing escrow account during the rescission period, arguably there would have been justification for charging interest to the borrower as a finance charge under Section 226, Title 12, C.F.R., Supplement 1, Section 23(c)(3). See, generally, *Forgus v. First Fed. S. & L. Assn. of Lakewood* (Dec. 6, 1979), 8th Dist. No. 39664, 1979 WL 210548.

{¶ 28} Since the borrower does not routinely learn of the terms of the bank's refinancing agreement until the closing, this one-sided situation places the borrower in an unequal bargaining position with the bank. The majority's conclusion that the borrower can "look elsewhere for a bank that could provide a similar loan" amounts to nothing more than speculation. How realistic is it for the borrower to obtain a loan from another lender with an identical interest rate and the same points during the three-day rescission period?

{¶ 29} The majority also justifies the interest charged by the bank over the three-day period as not an "overly burdensome amount of money" to the consumer. The focus of an unconscionability analysis, however, is on the bank's practices and not their effect upon the consumer. In the context of sheer numbers, the advantage to the bank can be significant when a period of steadily declining interest rates, as has occurred over the last five years, provides incentive for a large number of the bank's customers to refinance their mortgages for a better interest rate.

{¶ 30} I would reverse the trial court's order granting summary judgment in favor of the bank and remand this case to the trial court for further proceedings.