{¶ 53} I respectfully dissent.
 {¶ 54} The majority fails to apply the proper analysis regarding unconscionability. Furthermore, the majority does not distinguish between a consumer contract and a commercial contract. Courts should scrutinize consumer contracts more closely for unconscionability, especially regarding the parties' ability to deal at arm's length, and their relative bargaining power. Commercial reasonability is not the only consideration when analyzing the substantive unconscionability of a contract.
 {¶ 55} The majority finds procedural unconscionability in this contract, yet sidesteps its obligation to conduct a substantive analysis. When done, this analysis shows the subject arbitration provision is substantively unconscionable. As the majority acknowledges, the analysis of unconscionability and arbitration clauses by the Sixth Appellate District in Small is revealing and relevant.
 {¶ 56} "Unconscionability refers to the absence of a meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to one party." Small, at ¶ 20. "Accordingly, unconscionability consists of two separate concepts: (1) substantive unconscionability, which refers to the commercial reasonableness of the contract terms themselves and (2) procedural unconscionability, which refers to the bargaining positions of the parties." Id.
 {¶ 57} "'Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.'"Small at ¶ 21, quoting Collins v. Click Camera Video, Inc. (1993),86 Ohio App.3d 826, 834. Courts of this state will not enforce unconscionable arbitration clauses. Small at ¶ 20.
 {¶ 58} The arbitration provisions of the contract at issue are inherently unequal and unfair. The nursing home representative explained the rights Manley waived under these provisions in minimalist, simplistic terms, such as the inability to sue Personacare in court if soup were to be spilled on her. An example such as that hardly conveys the truth — that Manley might be waiving the right to discovery and jury trial even if she was killed by Personacare's negligence.
 {¶ 59} All of the arbitration rights in the contract inured to the benefit of Personacare, none to the benefit of Manley. In this arbitration clause, each party is responsible for its own costs and fees. Personacare pays for the first five days of the arbitration costs, which may bias the arbitrators. The location is non-neutral. The arbitration provisions are buried near the end of the extremely long admission contract, and are presented to the resident at the time of admission. Thus, a resident is required to make his or her decision regarding this vital issue at a time when, typically, they are sick, and in need of care. There is a grace period — although it is unclear whether residents such as Patricia Manley would ever be in any better condition to make a more well-informed decision.
 {¶ 60} This contract gives potential residents a choice between being out on the street with no medical care, or accepting the first available bed. The choice of a nursing home is not like booking a hotel room for vacation.
 {¶ 61} The arbitration provision is not in compliance with industry standards. Contract provisions of the type at issue are disfavored by the American Arbitration Association, the American Bar Association, and the American Medical Association. Binding arbitration should not be used between patients and commercial healthcare providers unless the parties agree to it after the dispute arises. This is the only way a consumer/patient entering a nursing or healthcare facility in an ailing and diminished capacity can stand on equal footing with a large corporate entity. This would promote meaningful dispute resolution and allow both sides to enter into this agreement voluntarily and knowingly. The law favors arbitration: it abhors contracts of adhesion.
 {¶ 62} The third factor of substantive unconscionability deals with the ability to properly determine future liability. It is clear that neither party to this contract could accurately predict the extent of future liability. The negligence had not occurred at the time of the signing of the contract. It was impossible to determine if Ms. Manley, at the time of admission, could be waiving her right to a wrongful death lawsuit. Certainly when she went into the nursing home she was anticipating her release.
 {¶ 63} Based upon the evidence, we know that each party to this contract anticipated that if soup was spilled on Manley, she waived her right to sue Personacare. Otherwise, the arbitration clause is overly broad and vague. There is no evidence either party anticipated not suing if there was medical negligence that caused death. Indeed, it is unreasonable to assume that this vague clause would include such an eventuality. There is no evidence that a meeting of the minds occurred as to (for instance) liability for wrongful death. There is no guarantee that an arbitration panel would afford less than a jury. The clause cannot reasonably be held to limit future liability, nor can the waiver be seen as voluntary or knowing.
 {¶ 64} Legal definitions aside, I suggest a truer measure of "unconscionability" regarding this contract. Would a responsible adult want their sick grandparent to be treated in the way the majority interprets it? If the answer is "no," then the contract is unconscionable.
 {¶ 65} I respectfully dissent and would reverse the judgment.