JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Terryl J. Martin, D.B.A. Tents for You, L.L.C., appeals from a September 14, 2006 judgment of the Parma Municipal Court, Small Claims Division, granting judgment and costs to defendant-appellee, Laurie Byke.
 {¶ 2} On April 28, 2006, Martin, president of Tents for You, L.L.C. ("Tents"), filed a complaint against Byke in the Parma Small Claims Court for breach of contract, claiming damages in the amount of $2,850, plus $50.50 court costs. In the complaint, Martin alleged that Byke rented a party canopy from Tents and failed to comply with the terms and conditions of the contract. Specifically, Martin contended that Byke "allowed an accumulation of snow or ice to collect on the rented tent," causing "the rented tent to collapse and as such was rendered unusable." In addition to damage to the tent, Martin alleged that there was also damage to ten folding chairs and three folding tables.
 {¶ 3} Martin attached three sections of the contract to the complaint: "Responsibility for Use and Disclaimer of Warranty;" "Responsibility for Equipment;" *Page 3 
and "Tent/Canopy Failure." Under "Responsibility for Use and Disclaimer of Warranty," the contract provided: "You are responsible for the use of the rented tent/canopy. You assume all risk inherent in the operation and use of the tent/canopy and agree to assume the entire responsibility for the defense of and to pay, indemnify and hold Tents For You, and all of its agents * * *, harmless * * *."
 {¶ 4} Under "Responsibility for Equipment," the contract stated: "From the time the tent/canopy is rented out until it is returned, you are responsible for it. If the tent/canopy is lost, stolen, or damaged under any circumstances while rented, regardless of fault, you shall be responsible for all charges * * *."
 {¶ 5} Finally, under "Tent/Canopy Failure," the contract provided: "You agree immediately to discontinue the attempt to use the tent/canopy should it at any time become unsafe or in a state of disrepair, and will immediately (one hour or less) notify Tents For You of the facts. * * *"
 {¶ 6} A hearing on the matter was held on May 30, 2006, before a magistrate. The following evidence was adduced at the hearing:
 {¶ 7} Martin testified that Byke had contacted him in April 2005, to rent a tent for a first communion party scheduled for Saturday April 23, 2005. He stated that he does not normally open his tent business until May 1, 2005, but he made an exception for Byke. *Page 4 
 {¶ 8} Martin explained that Byke rented a "20 x 20 party planner, which included delivery and set-up of a tent, sidewalls were included, lighting for the inside, six eight foot long banquet tables and * * * 50 chairs * * * and an ice chest."
 {¶ 9} Martin said that Byke requested a set up date of Thursday, April 21, 2005, and a removal date of Sunday, April 24, 2005. Martin testified that he informed Byke that due to his schedule, he may not set it up or remove it on the requested date.
 {¶ 10} Martin did set the tent up on Thursday, April 21, 2005. However, he did not remove the tent on Sunday, April 24, as requested. On Monday, April 25, Martin called Byke to tell her that he would take down the tent the following day, on April 26. It was during this phone call when Byke informed Martin that the tent had collapsed because of snow and ice.
 {¶ 11} Martin further testified that the tent could not be repaired, due to damage to the aluminum poles. He itemized the total replacement cost to be $3,019, which included the cost of the tent, two replacement curtains with windows, two white replacement curtains, ten folding chairs, and three folding tables.
 {¶ 12} Byke testified that the tent was for a party for her son's first communion. They planned to use the tent for the party on Saturday, April 23, 2005. The first communion was on Sunday, April 24, 2005. However, due to a snowstorm, they were not able to use the tent. She explained that "[s]ome of the guys" went outside that Saturday and brushed snow off of the tent with a broom. *Page 5 
 {¶ 13} Byke testified that on Sunday, the day of the first communion, she assumed that Martin would come and remove the tent. She said that an employee at Tents told her that the tent would be picked up by 11:00 a.m. on Sunday. Before they left for church, which was around 1:00 p.m., they removed more snow from the tent. When they left, the tent was still standing.
 {¶ 14} After church, Byke said they went to their niece's first communion party. When they got home, it was dark and they did not have power. They did not notice that the tent had collapsed until Monday morning. Byke explained that when Martin called on Monday, he said that he did not remove the tent on Sunday, as scheduled, because "the weather was too bad."
 {¶ 15} Martin stated that when he left his house on Sunday morning, in Parma, it had not snowed. Byke disagreed, saying that it snowed Saturday evening, and throughout the night on Saturday too. Martin also said that it did not snow in Westlake on Sunday, where he spent the day, and when he got home Sunday night, he was surprised to see all of the snow. Martin further testified that it snowed 18 inches (the court said 24 inches) that weekend.
 {¶ 16} Martin submitted a claim to his insurance company, but they denied it. Byke testified that she did not inquire of her insurance company to find out if it would cover the costs of the damaged items.
 {¶ 17} The magistrate issued his decision on May 30, 2006. The magistrate found: "Plaintiff established his claims and damages. Defendant established the *Page 6 
affirmative defense of Act of God, specifically the snow storm of April 23/24, [2005] which laid 18" — 24" of heavy wet snow on top of the tent, the subject of the Complaint, destroying it * * *. The event was the result of natural forces beyond human control, not reasonably anticipated and were the sole cause of the loss. Judgment for Defendant. Costs to Plaintiff."
 {¶ 18} Martin filed objections to the magistrate's decision on September 6, 2006. The trial court overruled Martin's objections on September 14, 2006, finding: "Although Plaintiff attempts to wash his hands completely free of any of the risk or responsibilities inherent in his business the argument must fail. The contract prepared by Plaintiff is substantially one sided in favor of Plaintiff rendering the contract unconscionable." The trial court then adopted the magistrate's decision, and ordered "Judgment for Defendant at Plaintiff's costs."
 {¶ 19} It is from this judgment that Martin appeals, raising the following three assignments of error:
 {¶ 20} "[1.] The trial court erred in finding that the contract was unenforceable due to unconscionability.
 {¶ 21} "[2.] The trial court erred in finding the defense of Act of God.
 {¶ 22} "[3.] The trial court erred in finding for Defendant as she breached the contractual terms requiring her to immediately notify Plaintiff if the tent became unsafe or in a state of disrepair and placed the risk of loss onto her if this provision was breached." *Page 7 
 {¶ 23} This court will consider all three of Martin's assignments of error concomitantly, since they are interrelated.
 {¶ 24} Martin argues that the trial court erred when it determined that the rental agreement was unconscionable.
 {¶ 25} Whether a contract or specific clause is unconscionable is a question of law, which we review de novo. Ins. Co. of North Am. v.Automatic Sprinkler Corp. (1980), 67 Ohio St.2d 91, 98.
 {¶ 26} The rental agreement in this case clearly fell within the Uniform Commercial Code ("UCC"), specifically Chapter 1310 of the Ohio Revised Code, regarding leases. R.C. 1310.01(5) defines "consumer lease" as "a lease that a lessor regularly engaged in the business of leasing or selling makes to a lessee who is an individual and who takes under the lease primarily for a personal, family, or household purpose." Lease means "a transfer of the right of possession and use of goods for a term in return for consideration." R.C. 1310.01(16).
 {¶ 27} R.C. 1310.06(A) provides that "[i]f a court as a matter of law finds a lease contract or any clause of a lease contract to have been unconscionable at the time it was made, the court may refuse to enforce the lease contract, may enforce the remainder of the lease contract without the unconscionable clause, or may so limit the application of the unconscionable clause as to avoid any unconscionable result."
 {¶ 28} "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with *Page 8 
contract terms that are unreasonably favorable to the other party."Collins v. Click Camera Video, Inc. (1993), 86 Ohio App.3d 826, 834. "Unconscionability thus embodies two separate concepts: 1) unfair and unreasonable contract terms, i.e., `substantive unconscionability,' and 2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., `procedural unconscionability' * * *. These two concepts create what is, in essence, a two-prong test of unconscionability. One must allege and prove a `quantum' of both prongs in order to establish that a particular contract is unconscionable." Id., quoting White Summers, Uniform Commercial Code (1988) 219, Section 4-7.
 {¶ 29} Substantive unconscionability concerns the actual terms of the agreement and whether the terms are unfair and unreasonable.Collins, supra, at 834. Contract clauses are unconscionable where the "clauses involved are so one-sided as to oppress or unfairly surprise [a] party." Neubrander v. Dean Witter Reynolds, Inc. (1992),81 Ohio App.3d 308, 311-312.
 {¶ 30} Procedural unconscionability involves the circumstances surrounding the execution of the contract between the two parties and occurs where no voluntary meeting of the minds was possible.Collins, supra at 834. In determining procedural unconscionability, a court should consider factors bearing on the relative bargaining position of the contracting parties — including age, education, intelligence, business acumen, and experience in similar transactions — whether the terms were explained *Page 9 
to the weaker party, and who drafted the contract. Id., citingJohnson v. Mobil Oil Corp. (E.D.Mich. 1976), 415 F.Supp 264, 268.
 {¶ 31} In the case sub judice, this court agrees with the trial court that the contract clauses at issue here, written by Martin and putting all responsibility for any damages on Byke — even those which she had no control of — were substantively and procedurally unconscionable. The terms of the agreement, which included that if the tent or canopy was damaged "under any circumstances while rented, regardless of fault," that Byke was responsible for all charges, were completely unreasonable and one-sided — in Martin's favor. The clauses were unfair and demonstrated the complete lack of meaningful choice and ability to negotiate on Byke's part in entering into this agreement.
 {¶ 32} The weekend Byke rented the tent, in April 2005, this region experienced a late winter (spring actually), extremely heavy snowstorm. The tent was large — 20 feet by 20 feet. Byke could not have reasonably been expected to keep 18 to 24 inches of snow off of it. Most people would not have a ladder big enough, or safe enough, to even reach the height of the tent, let alone keep it cleared of snow. Nor could Byke be expected to take down the tent in such a snowstorm, as it obviously required special expertise.
 {¶ 33} In addition, Martin's argument that had Byke called him on Sunday to inform him that it was snowing, the tent may not have been permanently damaged, is without merit. The evidence showed that Martin also lived in Parma and was home *Page 10 
Sunday morning. It had snowed most of Saturday evening and thus, he had to be aware of the unusual, heavy snowstorm. He claimed he went to Westlake all day on Sunday, where it was not snowing, but that does not take away from the fact that he knew, before he went to Westlake, that it had been snowing. Further, Byke was not even aware the tent had collapsed until Monday, which is when she told Martin.
 {¶ 34} Thus, we conclude the contract clauses at issue, wholly in Martin's favor and putting all responsibility on Byke for any and all damages — even though she had no control of mother nature that snowy April day, were unconscionable.
 {¶ 35} Martin's three assignments of error are overruled.
 {¶ 36} Accordingly, the judgment of the Parma Municipal Court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, J., CONCURS; ANTHONY O. CALABRESE, JR., P.J., DISSENTS WITH SEPARATE DISSENTING OPINION *Page 11