[Cite as *Wallace v. Ganley Auto Group*, 2011-Ohio-2909.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95081**

## APRIL WALLACE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## THE GANLEY AUTO GROUP, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-662122

**BEFORE:** Keough, J., Cooney, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** June 16, 2011

**ATTORNEYS FOR APPELLANTS**

Ronald I. Frederick
Ronald Frederick & Associates Co., L.P.A.
1370 Ontario Street, Suite 1240
Cleveland, OH 44113-1971

F. Paul Bland, Jr., pro hac vice
Claire Prestel, pro hac vice
Public Justice, P.C.
1825 K Street NW, Suite 200
Washington, D.C. 20006

**ATTORNEYS FOR APPELLEES**

Paul R. Harris
David D. Yeagley
Ulmer & Berne LLP
Skylight Office Tower
1660 West 2nd St., Suite 1100
Cleveland, OH 44113-1448

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiffs-appellants, April Wallace, Carolyn Murray, and Jacob Gordon (collectively "appellants"), appeal from the trial court's judgment granting the motion to stay pending arbitration of defendants-appellees, Ganley Auto Group, Ganley Management Co., Ganley Chevrolet, Inc., Ganley Bedford Imports, Inc., and Ganley, Inc. ("Ganley" or collectively "Ganley defendants"). For the reasons that follow, we affirm.

### I.    Overview

**{¶ 2}** Wallace, Murray, and Gordon purchased pre-owned vehicles from Ganley dealerships. They subsequently filed a putative class action, alleging that the Ganley defendants sold them (and others) vehicles that had previously been titled to rental car companies and used as rental cars and knowingly failed to disclose their knowledge as to the history of each such vehicle. Appellants asserted claims for violation of Ohio's Consumer Sales Protection Act ("CSPA"), R.C. 1345.01 et seq., and for fraud.

**{¶ 3}** In response to the complaint, Ganley filed a motion to dismiss or stay pending arbitration ("motion to stay") and asked the court to enforce the arbitration agreement set forth in each of the appellants' motor vehicle purchase contracts. In response to the motion to stay, appellants sought discovery, which the trial court permitted as to "the enforceability of the arbitration provision at issue in this case" as related to the named plaintiffs. Appellants subsequently propounded interrogatories, document requests, and requests for admissions. They then filed a motion to compel responses to their discovery requests, which the trial court denied, ruling that "the information sought by the plaintiffs is irrelevant, and outside the scope of the court's order * * *."

**{¶ 4}** Appellants then filed a brief opposing Ganley's motion to stay and the matter proceeded to a hearing before the court. Wallace, Murray, and Gordon did not appear for the hearing nor did they present any witnesses.

Ganley presented the testimony of Russell Harris, Ganley's general counsel, regarding the origin and terms of the arbitration agreements signed by Wallace, Murray, and Gordon when they purchased their vehicles.

{¶ 5} The trial court subsequently granted Ganley's motion to stay.

## II. Motion to Stay Pending Arbitration

{¶ 6} The arbitration agreement signed separately by Wallace, Murray, and Gordon was prominently set out in each purchase contract in red ink in capital letters as a separate agreement with a separate signature line. The agreement signed by Wallace and Gordon stated:

{¶ 7} "ARBITRATION: ANY DISPUTE BETWEEN YOU AND DEALER (SELLER) WILL BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT YOUR RIGHTS IN THIS SALES TRANSACTION AND ANY FUTURE SERVICE TRANSACTIONS WITH DEALER. (EXCEPT FOR ANY CLAIM IN SMALL CLAIMS COURT). YOUR RIGHTS WILL BE DETERMINED BY A <u>NEUTRAL ARBITRATOR</u>, NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT ARBITRATION PROCEDURES ARE <u>SIMPLER AND MORE LIMITED</u> THAN RULES APPLICABLE IN COURT. ARBITRATOR DECISIONS ARE AS ENFORCEABLE AS ANY COURT ORDER AND ARE SUBJECT TO A <u>VERY LIMITED REVIEW</u> BY A COURT. SEE BACK OF THIS CONTRACT FOR ADDITIONAL

ARBITRATION TERMS."[1]

{¶ 8}  The back of the purchase contract, at the bottom of the page, under the heading "<u>ADDITIONAL ARBITRATION TERMS,</u>" contained four paragraphs that gave more information about the arbitration proceedings. Paragraph one explained that any arbitration proceeding would be conducted in accordance with the rules of the American Arbitration Association ("AAA"). In addition, it stated that "[c]lass action claims or other joinder or consolidation of claims of multiple purchasers under different purchase contracts are and shall be prohibited in any arbitration proceeding."

{¶ 9}  The second paragraph advised that "[t]he dealership hopes that you would first attempt to resolve any complaint you may have after purchase or service through the General Manager of the dealership.  If you are unable to resolve your complaint at the dealership, you should contact Ganley Management Co. * * *, Attention:  Russell W. Harris, General Counsel * * *." The third paragraph explained that some "small claims" could be filed in small claims court, but the purchaser was required to use AAA arbitration procedures if the claim exceeded the jurisdiction of the small claims court.  It stated further that the "dealership will pay or reimburse you for any arbitration fee imposed by AAA * * *."  Finally, the fourth paragraph set

---

[1]Murray signed a slightly revised version of Ganley's arbitration clause, which did not include the "as enforceable" and "simpler and more limited" language.

forth the AAA website, address, and telephone number, and advised that more information about arbitration could be obtained by accessing the AAA website or contacting AAA directly.

{¶ 10} In their first assignment of error, appellants contend that the trial court erred in granting Ganley's motion to stay pending arbitration because the arbitration clause: (1) is void as a matter of public policy because it bans class action arbitration; (2) is substantively and procedurally unconscionable; and (3) does not apply to appellants' claims.

{¶ 11} This court reviews de novo whether an arbitration agreement alleged to be unconscionable is enforceable; however, factual findings of the trial court must be afforded great deference. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶2.

{¶ 12} R.C. 2711.01(A) states that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶ 13} Ohio courts recognize a "presumption favoring arbitration" that arises "when the claim in dispute falls within the scope of the arbitration provision." *Williams v. Aetna Fin. Co.* (1998), 83 Ohio St.3d 464, 471, 700 N.E.2d 859. Ohio's "strong policy favoring arbitration" is consistent with federal law supporting arbitration, as set forth in the Federal Arbitration Act

("FAA"), 9 U.S.C. Section 1, et seq. *Taylor*, supra, fn.1.

{¶ 14} Ohio law requires a stay of proceedings when an arbitrable dispute has been improperly brought before a court. See, e.g., *McGuffey v. LensCrafters, Inc.* (2001), 141 Ohio App.3d 44, 50, 749 N.E.2d 825 (noting that a trial court "shall" stay proceedings pending arbitration once it is satisfied that an issue is arbitrable); *Sasaki v. McKinnon* (1997), 124 Ohio App.3d 613, 618, 707 N.E.2d 9 ("The Ohio Arbitration Act, which strongly favors arbitration, compels the court to review the arbitration clause at issue and, if the court is satisfied that the dispute or claim is covered by the arbitration clause, give effect to the clause and stay the proceedings pursuant to R.C. 2711.02.") Any doubts regarding arbitration should be resolved in its favor. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶18.

{¶ 15} Despite this strong policy favoring arbitration, appellants contend that the clause at issue is void as against public policy because it bans class action arbitration. They argue that the class action mechanism is "critical" to enforcing consumer protection laws and, therefore, the CSPA contains an unexpressed policy favoring class actions. Therefore, they contend, the class action ban found in Ganley's arbitration clause "invades the policy considerations of the CSPA" and is consequently void as against public policy. We do not agree.

{¶ 16} Recently, in *AT&T Mobility LLC v. Concepcion* (2011), 563 U.S. __, 131 S.Ct. 1740, __ L.Ed.2d __, the United States Supreme Court considered whether enforcement of arbitration clauses could be conditioned upon the availability of classwide arbitration procedures. The sales agreement involved in *Concepcion* provided for arbitration of all disputes, but prohibited classwide arbitration. When a dispute arose, the buyers sued AT&T and their suit was consolidated with a class action. The federal district court denied AT&T's motion to compel arbitration under the agreement, finding the arbitration clause unconscionable because it prohibited classwide arbitration in violation of a California judicial rule classifying most collective-arbitration waivers in consumer contracts as unconscionable. The Ninth Circuit agreed.

{¶ 17} The United States Supreme Court reversed. It noted that arbitration is a matter of contract, and thus parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes. Id. at 1748-49. It noted further that the FAA's "overarching purpose" is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 1748. The Court found that the switch from bilateral to class arbitration sacrifices arbitration's informality and "makes the process slower, more costly, and more likely to generate procedural morass than final

judgment." Id. at 1751. Further, the Court found that "[a]rbitration is poorly suited to the higher stakes of class litigation." Id. at 1752. Accordingly, the Court found that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA," which "was designed to promote arbitration." Id. at 1748.

{¶ 18} Additionally, the Court found that states may not require a procedure, such as class-wide arbitration, that is inconsistent with the FAA, even if the procedure may be desirable for other reasons. Id. at 1753. Thus, the Court held that California's judicial rule prohibiting class-action waivers in arbitration agreements was preempted by the FAA. Id.

{¶ 19} In light of the Supreme Court's holding in *Concepcion*, appellants' argument that Ganley's arbitration clause is unenforceable because it bans class actions is without merit. Appellants would have us make a rule that, at least with respect to the CSPA, any arbitration agreement that bans class actions is unenforceable. *Concepcion*, however, makes clear that enforcement of arbitration clauses cannot be conditioned upon the availability of classwide arbitration. Further, it makes clear that courts may not apply judicial rules in a way that frustrates the purpose of the FAA, which favors the enforcement of arbitration agreements according to their terms. Hence, even if we were to find that the CSPA contains a policy favoring class actions

(an issue we need not decide), this court may not apply that policy in a way that disfavors arbitration. Appellants next argue that Ganley's arbitration agreement is unconscionable and therefore unenforceable. Although arbitration is encouraged as a way to settle disputes, an arbitration clause is not enforceable if it is unconscionable. *Felix v. Ganley Chevrolet, Inc.*, Cuyahoga App. Nos. 86990 and 86991, 2006-Ohio-4500, ¶15.

{¶ 20} "Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294. It embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) "individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., procedural unconscionability." *Olah v. Ganley Chevrolet, Inc.*, Cuyahoga App. No. 86132, 2006-Ohio-694, ¶14, citing *Collins*, supra. The party asserting unconscionabilty of a contract must prove both substantive and procedural unconscionability. *Taylor,* ¶52.

{¶ 21} Substantive unconscionability pertains to the contract itself, without any consideration of the individual contracting parties, and requires a determination of whether the contract terms are commercially reasonable

in the context of the transaction involved. *Sikes v. Ganley Pontiac Honda, Inc.*, Cuyahoga App. No. 82889, 2004-Ohio-155, ¶11, citing *Collins*, supra. "Procedural unconscionability involves factors bearing on the relative bargaining position of the contracting parties, such as age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Collins* at 834.

{¶ 22} Appellants contend that the arbitration agreements are substantively unconscionable because they contain "confusing" and "misleading" language. First, they argue that the language suggesting that the dealership "hopes" a consumer would first try to resolve any complaint with Ganley's general counsel is confusing because it imposes a "pre-arbitration exhaustion requirement" that suggests to consumers that they must exhaust their claims with Ganley's general counsel before proceeding to arbitration. But a fair reading of this language demonstrates there is no such requirement; the arbitration provision merely invites a customer to try to informally resolve a dispute before initiating formal proceedings.

{¶ 23} Next, appellants contend that the arbitration agreements they signed are substantively unconscionable because they contain language

similar to that found misleading and unenforceable by this court in *Olah*, supra, and *Felix*, supra. In *Olah*, this court analyzed Ganley's arbitration clause and concluded: "[W]e find that the arbitration provision by its incompleteness is not only confusing, but misleading and thus substantively unconscionable. Accepting the arbitration clause as written, plaintiffs could not have known what being bound to arbitration really meant. The clause does not include some very important and material information plaintiffs would have needed in order to make an informed decision about whether to agree to arbitration. Because of the absence of any details about the arbitration process that plaintiffs would be bound to, we conclude that when they signed the purchase agreement[,] plaintiffs were substantially less informed than defendant." Id., ¶26. The *Felix* court adopted the reasoning of *Olah* and likewise found Ganley's arbitration clause substantively unconscionable.

{¶ 24} Although the arbitration clause signed by appellants contains the language objected to in *Olah* and *Felix*,[2] it also contains significant additional information regarding arbitration that was not included in the clause at issue in those cases. Instead of directing the purchaser to "see general manager for information regarding arbitration process," as in *Olah* and *Felix,* the

---

[2]The agreement signed by Murray does not contain the "as enforceable" and "simpler and more limited" language that the *Olah* court found troublesome.

clause appellants signed directed them to four paragraphs on the back of the agreement, which contain specific information about the arbitration process that was missing in *Olah* and *Felix*.   In light of this additional information, we do not agree that appellants "could not have known what being bound to arbitration really meant," *Olah*, ¶26, or that they "were substantially less informed" than Ganley when they signed the arbitration agreement.   Id.

{¶ 25} Furthermore, the statement that "arbitration procedures are simpler and more limited than rules applicable in court," which this court found "troublesome" in *Olah* and *Felix*, is indeed an accurate statement of the law.   See, e.g., *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985), 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration"); *Preston v. Ferrer* (2008), 552 U.S. 346, 358, 28 S.Ct. 978, 169 L.Ed.2d 917 ("A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results.").

{¶ 26} Appellants also contend that Ganley's arbitration agreement is substantively unconscionable because it contains hidden fees.   Specifically, they argue that although the agreement provides that arbitration will be governed by AAA's consumer rules, they seek injunctive relief, which will require additional fees than those required under AAA's consumer rules. This argument fails as well because the agreement specifically provides that

Ganley will pay the costs associated with arbitrating any dispute.

{¶ 27} Because appellants failed to sustain their burden of demonstrating substantive unconscionability, we need not determine whether Ganley's arbitration clause is procedurally unconscionable. *Taylor*, ¶53 (the party challenging a contract as unconscionable must prove "a quantum" of both procedural and substantive unconscionability). Nevertheless, in the interest of justice, we address appellants' arguments.

{¶ 28} Appellants first contend that the arbitration clause is procedurally unconscionable because Ganley is "a large business operation," whereas appellants are neither highly educated nor "sophisticated businesspeople."

{¶ 29} Ganley and appellants were no doubt in unequal bargaining positions. However, an unequal bargaining position is not, in and of itself, a sufficient reason to hold an arbitration agreement unenforceable. *Gilman v. Interstate/Johnson Lane Corp.* (1991), 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26. There must be some evidence that, as a result of the imbalance, the party in the weaker position was defrauded or coerced into agreeing to the arbitration clause. Id. Appellants make no such allegations.

{¶ 30} Appellants also argue that the clause was procedurally unconscionable because it was contained in a pre-printed form and no one explained the clause to them. But the Ohio Supreme Court has held that a

"showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the unconscionability of the arbitration clause." *Taylor*, supra, ¶45; see, also, *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, Cuyahoga App. No. 89277, 2009-Ohio-4873, ¶12.

{¶ 31} Furthermore, the law does not require that each aspect of a contract be explained orally prior to signing the contract. A party to a contract is responsible for reading what he signs. *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 503, 1998-Ohio-612, 692 N.E.2d 574; *Haller v. Borror Corp.* (1990), 50 Ohio St.3d 10, 14, 552 N.E.2d 207. "To be sure, an arbitration clause in a consumer contract with some characteristics of an adhesion contract 'necessarily engenders more reservations than an arbitration clause in a different setting,' such as a collective bargaining agreement or a commercial contract between two businesses." *Taylor*, ¶50, quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 472, 1998-Ohio-294, 700 N.E.2d 859. Nevertheless, the Ohio Supreme Court has declined to require more specific disclosures when arbitration is concerned, reasoning that form contracts lower transaction costs and benefit consumers through lower prices. *Taylor*, ¶50. Thus, Ganley had no independent duty to point out or explain the arbitration clause to appellants.

{¶ 32} Our review of the arbitration agreement indicates that its terms were clearly laid out for appellants. The clause is written in red ink on the

first page of the sales agreement. It explicitly states that it pertains to arbitration, with a separate signature line, and its terms are specifically listed directly above the signature line, all in upper case type. Moreover, above each appellant's signature on the contract is the phrase: "Purchaser hereby represents that the purchaser * * * has read and understands the terms and conditions on the front and back of this contract." Accordingly, appellants' argument that the clause is unconscionable because they did not "understand" it is not persuasive.

{¶ 33} Last, appellants contend that the trial court erred in granting Ganley's motion to stay pending arbitration because the arbitration clause does not apply to their claims. They contend that the clause refers only to disputes relating to the vehicle purchase contract, and does not extend to claims that are "related" to that parties' sales transaction. They argue that because their claims relate to Ganley's alleged failure to disclose facts *before* they signed the purchase agreement containing the arbitration clause, their claims originated before the contract was signed and thus are not covered by the agreement to arbitrate.

{¶ 34} "An arbitration clause in a contract should not be denied effect unless it may be said with positive assurance that the clause is not susceptible of an interpretation that covers the asserted dispute." *Melia v. Office Max N. Am., Inc.,* Cuyahoga App. No. 87249, 2006-Ohio-4765, ¶15.

Moreover, an "arbitration clause that is very broad and purports to encompass 'all' claims arising from the contract creates a presumption that the parties agreed to arbitrate all disputes, unless the dispute is expressly excluded, or if there is very strong evidence to show that the claim should be excluded." *Burkey v. Speegle*, Portage App. No. 2003-P-0113, 2004-Ohio-4388, ¶18, citing *Ohio State Dept. of Adm. Serv. v. Moody/Nolan Ltd., Inc.* (Dec. 12, 2000), Franklin App. No. 00AP-336.

{¶ 35} In *Burkey*, supra, the seller of real estate sued a realtor for breach of fiduciary duty based on representations made by the realtor prior to the sale of the property. When the realtor moved to enforce the arbitration clause contained in the sales contract, which covered "[any dispute] concerning this contract," the seller argued that the clause was not applicable because her claim related to conduct that occurred before she signed the sales contract. The Eleventh District rejected that argument, and held "it is clear that [the seller's] claim against [the realtor] arises from the formation of the contract for sale of the property." Id., ¶17. The court stated that "the basis of [the seller's] claim indicates why she formed the contract in question and, therefore, falls under a reasonable interpretation of the arbitration clause * * *." Id., ¶20.

{¶ 36} As in *Burkey*, it is clear that appellants' claims arise from the formation of the purchase agreement: appellants allege that Ganley sold them

rental cars without disclosing that the cars had previously been used as such. But for the transactions governed by the purchase agreement, appellants would have no basis to institute any legal proceeding. Because the arbitration clause at issue broadly covers "any dispute between you and dealer (seller)," appellants' claims are indeed covered by the clause.

{¶ 37} Appellants' first assignment of error is overruled.

### III. Motion to Compel Discovery

{¶ 38} In their second assignment of error, appellants contend that the trial court erred in denying their motion to compel discovery.

{¶ 39} A trial court has broad discretion on decisions regarding discovery matters. *Dandrew v. Silver*, Cuyahoga App. No. 86089, 2005-Ohio-6355, ¶35. Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 1998-Ohio-329, 692 N.E.2d 198.

{¶ 40} Our review of the record indicates that the trial court permitted arbitration-related discovery, but limited it to matters relating to "the enforceability of the arbitration provision at issue in this case" and to the "plaintiffs named in the first and second amended complaints." Appellants then propounded 41 separate requests for production of documents on each of the Ganley defendants, as well as numerous interrogatories.

{¶ 41} Appellants' document requests clearly exceeded the scope of the

trial court's discovery order. For example, appellants sought all documents related to "income levels, credit ratings, or credit scores" of all customers for the five-year period between January 1, 2004 and the present. Another request asked for "[t]he entire customer contracts for the transactions referred to in *Olah v. Ganley Chevrolet* and in *Felix v. Ganley Chevrolet.*" Other requests sought all documents related to all arbitrations, all small claims actions, and all class action proceedings between Ganley and any of its customers. Another request sought documents for the period January 1, 2004 to the present regarding "the number and percentage of *other* auto dealers' customers who financed their purchase and the percentage of the sale or lease price that customers of *other* auto dealers financed." (Emphasis added.)

{¶ 42} Appellants' interrogatories likewise exceeded the scope of discovery. For instance, appellants asked Ganley to identify "each and every class action proceeding" and "every other court proceeding" in which it had been involved "[f]or the period from three years before" it started "using an arbitration provision" until the present.

{¶ 43} In its judgment entry denying appellants' motion to compel, the trial court ruled that the broad discovery sought by appellants was not relevant to how the arbitration agreement between Ganley and each individual appellant was unconscionable. The court ruled that "the only

relevant information needed to determine whether the arbitration agreement is unconscionable pertains to the facts and circumstances surrounding each of the named plaintiffs only."

**{¶ 44}** We find no abuse of discretion in the trial court's ruling. As the trial court stated in its entry, "a determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances. *Brunke v. Ohio State Home Serv., Inc.*, Lorain App. No. 08CA009320, 2008-Ohio-5394, ¶8." Accordingly, the trial court properly limited discovery to the enforceability of the arbitration provision as it pertained to Wallace, Murray, and Gordon, the named plaintiffs. Appellants' discovery requests far exceeded the limitations set by the court, and sought documents and information that were not relevant to the issue before the court. Furthermore, appellants' interrogatories were served upon "The Ganley Auto Group," which is not a legally cognizable entity. Hence, appellants' motion to compel was properly denied.

**{¶ 45}** Appellants' second assignment of error is therefore overruled.

Affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

COLLEEN CONWAY COONEY, P.J., and
KENNETH A. ROCCO, J., CONCUR