[Cite as *Jamison v. LDA Builders, Inc.*, 2013-Ohio-2037.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| JAMES M. JAMISON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2011-P-0072** |
| LDA BUILDERS, INC., et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2007 CV 01180.

Judgment: Affirmed.

*Scott H. Kahn* and *Gregory J. Ochocki*, McIntyre, Kahn & Kruse Co., L.P.A., The Galleria & Towers at Erieview, 1301 East Ninth Street, Suite 2200, Cleveland, OH 44114-1824 (For Plaintiffs-Appellees).

*Ronald S. Marshek*, 27600 Chagrin Boulevard, Suite 160, Woodmere Village, OH 44122 (For Defendants-Appellants).

THOMAS R. WRIGHT, J.

{¶1} Appellants, LDA Builders, Inc. ("LDA") and its owner, Tony Lunardi ("Lunardi"), appeal from a judgment of the Portage County Court of Common Pleas, overruling their motions to dismiss and stay pending arbitration.

{¶2} On August 4, 2005, appellees, James and Betty Jamison ("the Jamisons"), entered into a New Home Purchase Agreement ("Agreement") with LDA, a seasoned home builder, for the construction of a home in Streetsboro. The Agreement includes

two limited warranties: (1) a one-year limited warranty through the Summit and Portage County Home Builders Association which utilizes the Better Business Bureau's ("BBB") binding arbitration services for arbitrating disputes; and (2) a ten-year limited warranty through Professional Warranty Service Corporation ("PWSC"), an independent agency. Each warranty contains its own binding arbitration procedure.

{¶3} For purposes of this appeal, LDA and Lunardi maintain the BBB warranty is not at issue because the Jamisons sought arbitration solely through the PWSC ten-year limited warranty ("Limited Warranty") and never attempted to arbitrate through the BBB warranty. Thus, LDA and Lunardi limit their arguments to the trial court's determination regarding the Limited Warranty.

{¶4} The signature page of the application for the Limited Warranty, line 27, states in pertinent part that "[a]ny such binding arbitration(s) shall be conducted in accordance with the rules and procedures applicable to the arbitration organization hearing the dispute or, where those rules are silent, the United States Arbitration Act (9 U.S.C. §1 et. seq.)."

{¶5} With respect to arbitration specifically, the Limited Warranty states in part:

{¶6} "Any binding arbitration proceeding will be conducted by an independent arbitration organization designated by [PWSC] or OUR insurer. The rules and procedures followed will be those of the designated arbitration organization. A copy of the applicable rules and procedures will be delivered to YOU upon request.

{¶7} "The arbitration will determine YOUR and OUR or OUR insurer's rights and obligations under this BUILDER'S LIMITED WARRANTY. These rights and

obligations include but are not limited to those provided to YOU or US by local, state or federal statutes in connection with this BUILDER'S LIMITED WARRANTY.

{¶8}  "The award of the arbitrator will be final, binding and enforceable as to both YOU and US or OUR insurer, except as modified, or vacated in accordance with applicable rules and procedures of the designated arbitration organization, or, in their absence, the United States Arbitration Act (9 U.S.C. 1 et seq.)

{¶9}  "Binding arbitration shall be the sole remedy for resolving disputes for YOU and US and OUR insurer.  The costs and expenses for the arbitration will be paid by US or OUR insurer except for the Eighty Dollar ($80.00) arbitration filing fee which will be paid by the party requesting arbitration.  If YOU request arbitration and YOU prevail on any claimed DEFICIENCY or DEFINED STRUCTURAL ELEMENT FAILURE under dispute, the Eighty Dollar ($80.00) arbitration filing fee will be refunded to YOU."

{¶10}  LDA and Lunardi contend they provided a copy of the Limited Warranty to the Jamisons on August 1, 2005, before construction began, and another copy in April of 2006, before the Jamisons scheduled a final inspection and accepted the home.  The Jamisons, however, do not remember receiving a copy of the Limited Warranty in August of 2005, but recall receiving it in April or May of 2006, before the Jamisons agreed to accept their home.  Ultimately, the trial court concluded that the testimony presented by LDA and Lunardi revealed that they did not know if a copy of the Limited Warranty with the binding arbitration clause was ever given or mailed to the Jamisons on or before August 4, 2005.

{¶11}  On June 1, 2006, LDA prepared and presented the Jamisons with the Limited Warranty application.  The Jamisons accepted the home and signed the

document in two separate places on that date. On August 29, 2007, the Jamisons filed a request for arbitration with PWSC. However, instead of participating in arbitration, the Jamisons filed a complaint with the Portage County Court of Common Pleas on August 31, 2007.

{¶12} In their complaint, the Jamisons allege their home was not constructed in a workmanlike manner. The complaint contains causes of action for breach of contract, breach of warranty, negligence, breach of implied warranty, violations of the Magnusson-Moss Warranty Act, faulty design, and claims under the Ohio Consumer Sales Practices Act for damages and rescission. LDA and Lunardi moved to dismiss the complaint on the basis that the binding arbitration provision contained in the Limited Warranty controlled the dispute. LDA and Lunardi also filed a series of motions to stay the proceedings pursuant to the arbitration provision.

{¶13} After an evidentiary hearing, the magistrate issued a decision to overrule LDA's and Lunardi's motions to dismiss and stay. The magistrate determined that the Jamison's Magnusson-Moss Warranty Act claim and their Ohio Consumer Sales Practices Act claim for rescission were not arbitrable, and that both the BBB and Limited Warranty arbitration clauses were unconscionable. LDA and Lunardi filed objections to the magistrate's decision.

{¶14} Following a hearing, the trial court overruled LDA's and Lunardi's objections. The court adopted the magistrate's decision, overruled LDA's and Lunardi's motions to dismiss and stay, and found both the BBB and Limited Warranty arbitration clauses substantively and procedurally unconscionable. LDA and Lunardi filed a timely appeal, asserting the following five assignments of error:

4

{¶15} "[1.] The trial court abused its discretion in failing to stay the proceedings and allow for arbitration to proceed, as agreed to by the parties in the Purchase Agreement, and further specifically requested by Appellees.

{¶16} "[2.] The trial court abused its discretion in finding that the arbitration provisions at issue were substantively unconscionable.

{¶17} "[3.] The trial court abused its discretion in finding that the arbitration provision at issue was procedurally unconscionable.

{¶18} "[4.] The trial court abused its discretion in determining that both the Magnusson-Moss Warranty Act and the Ohio Consumer Sales Practices Act applied in this case, and that under both Acts, this case was not arbitrable.

{¶19} "[5.] The Federal Arbitration Act requires courts to enforce arbitration agreements as such Act preempts state law to the contrary."

{¶20} In their first assignment of error, LDA and Lunardi argue the trial court abused its discretion in failing to stay the proceedings and allow for arbitration to proceed as agreed to by the parties in the Agreement, and further, as specifically requested by the Jamisons. LDA and Lunardi assert there is a strong public policy favoring arbitration. They claim the Federal Arbitration Act is controlling and mandates arbitration.

{¶21} Preliminarily, we note that LDA and Lunardi, throughout their appellate brief, incorrectly state the standard of review as abuse of discretion. Pursuant to the leading case in Ohio, the standard of appellate review in determining the enforceability of an arbitration provision is de novo; however, any factual findings by the trial court

5

must be accorded deference. *Taylor Building Corp. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶2.

**{¶22}** Further, the determination of whether a contractual provision unconscionable is fact-dependant and requires an analysis of the circumstances of the particular case before the court. *Bayes v. Merle's Metro Builders/Blvd. Constr., LLC.,* 11th Dist. No. 2007-L-067, 2007-Ohio-7125, ¶6. Pursuant to this standard, this court possesses a plenary power of review affording the trial court's analysis no deference. *Id.*

**{¶23}** Because the first assignment of error is interrelated with LDA's and Lunardi's second and third assignments, we will address in the second and third assignments whether the trial court erred in failing to stay the proceedings pursuant to its determination that the arbitration provision is substantively and procedurally unconscionable.

**{¶24}** With respect to LDA's and Lunardi's claim in their first assignment that the Federal Arbitration Act is controlling and mandates arbitration, the record reflects they failed to raise this issue at the trial court level. This court has held that a party's failure to raise an issue before the trial court acts as a waiver of the issue on appeal. *Schmidt v. Brower*, 11th Dist. No. 2010-A-0014, 2010-Ohio-4431, ¶17.

**{¶25}** Accordingly, LDA's and Lunardi's first assignment of error is without merit.

**{¶26}** Because LDA's and Lundardi's second and third assignments both address the issue of the unconscionability of the arbitration clause in the Limited Warranty, we will consider them together.

6

{¶27} In their second assignment of error, LDA and Lunardi contend the trial court abused its discretion in finding the arbitration provision at issue was substantively unconscionable. They allege the Jamisons made merely "nebulous" claims of substantive unconscionability, and maintain that the terms of the Limited Warranty were actually fair and commercially reasonable.

{¶28} In their third assignment of error, LDA and Lunardi allege that the trial court abused its discretion in finding the arbitration provision at issue was procedurally unconscionable. Specifically, LDA and Lunardi allege that there was no evidence in the record to suggest that the negotiations of the arbitration agreement at issue was procedurally unconscionable. We disagree with LDA and Lunardi as to both the second and third assignments of error.

{¶29} "The Ohio General Assembly in R.C. Chapter 2711 has expressed a strong policy favoring arbitration of disputes." *Taylor*, 2008-Ohio-938 at ¶24. R.C. 2711.01(A) provides:

{¶30} "A provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶31} "Indeed, the Ohio courts recognize a 'presumption favoring arbitration' that arises 'when the claim in dispute falls within the scope of the arbitration provision.'"

7

*Taylor* at ¶26, quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). As a result, a court must indulge a strong presumption in favor of arbitration and resolve any doubts in favor of arbitrability. *Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App.3d 622, 2006-Ohio-4464, ¶6.

**{¶32}** "However, an arbitration provision may be held unenforceable under (R.C. 2711.01(A)) on 'grounds that exist at law or in equity for the revocation of any contract.'" *Ball* at ¶6. One such ground is unconscionability. *Id.* "Unconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Taylor*, at ¶33, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383 (1993), quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (C.A.D.C. 1965). Furthermore, "[a] party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision is *both* procedurally and substantively unconscionable" (Emphasis added) *Ball* at ¶6; *see also Bayes,* 2007-Ohio-7125 at ¶8.

**{¶33}** As this court stated in *Bayes*:

**{¶34}** "Substantive unconscionability goes to the specific terms of the contract. * * * When considering substantive unconscionability, the court should observe whether the terms of the contract are commercially reasonable. * * * With respect to this issue, the Second Appellate District has observed:

**{¶35}** "'Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular (* * *) clause is substantively unconscionable have

8

considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability.' *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834 * * *." (Internal citations omitted) *Bayes* at ¶9-10.

**{¶36}** The trial court adopted the magistrate's decision, its conclusions, and findings and recommendations "as the Court's own." Considering the magistrate's lengthy and accurate recitation of the law on the subject of unconscionability of arbitration clauses, we can extrapolate that the following findings supported the magistrate's conclusion that the arbitration clause in the Limited Warranty is substantively unconscionable:

**{¶37}** "At the time LDA presented the Jamisons with the Limited Warranty Application:

**{¶38}** "a. LDA had not provided the Jamisons with any arbitration rules or procedure.

**{¶39}** "b. LDA had not identified the arbitration organization to the Jamisons; and

**{¶40}** "c. LDA had not advised the Jamisons that they were waiving important rights or of the importance of the arbitration provision."

**{¶41}** Pursuant to *Taylor*, the Ohio Supreme Court determined that an arbitration clause's failure to warn the buyers that they are giving up their right to a jury trial is not an aspect that renders the arbitration clause substantively unconscionable. *Id.* at ¶54. Specifically, the court in *Taylor* opined that "as other courts have concluded, waiver of one's jury trial rights is a necessary consequence of agreeing to have an arbitrator decide a dispute." *Id.* Thus, the conclusion that the failure to advise the Jamisons that

9

they were giving up the right to a jury trial was substantively unconscionable was incorrect.

{¶42} We turn now to the magistrate's finding regarding the Limited Warranty's failure to identify the arbitration organization. The specific language with which the Jamisons take issue is the provision that "any binding arbitration proceeding will be conducted by an independent arbitration organization designated by [PWSC] or our insurer." For the reasons that follow, this failure is also not considered to be substantively unconscionable.

{¶43} The arbitration clause in the Limited Warranty states that the Federal Arbitration Act (9 U.S.C. et. seq.)("FAA") controls when the rules and procedures of the arbitration organization are silent. While the arbitration clause states that PWSC or its insurer will designate an independent arbitrator, it does not identify the arbitration organization or individual by name. 9 U.S.C. Section 5 provides:

{¶44} "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, *or if for any other reason there shall be a lapse in the naming of an arbitrator * * ** or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator * * * as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein * * *." (Emphasis added.)

{¶45} Thus, if the Jamison's did not want to "avail" themselves of the method set forth in the arbitration clause because they felt the PWSC or its insurer would not or did

10

not select an "independent" arbitrator, they have a remedy which allows them to either petition the court to appoint an arbitrator or to seek removal of one already selected. *See Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067-68 (C.A. 2 1972) (substitution of a neutral arbitrator prior to arbitration has been held to be proper under the FAA); *see also Reno v. Bethel Village Condominium Assn., Inc.*, 10th Dist. No. 08AP-10, 2008-Ohio-4462, ¶11 (construing R.C. 2711.04, Ohio's companion provision to 9 U.S.C.S Section 5, as permitting request before arbitration that the court appoint or remove an arbitrator.); *Harold Allen's Mobile Home Factory Outlet, Inc. v. Butler*, 825 So.2d 779, 785, 2002 Ala. LEXIS 16. (determination by trial court that a provision authorizing seller to select the arbitrator was unconscionable required the court to appoint an arbitrator under the FAA.)

**{¶46}** Furthermore, a party may challenge an arbitration award under 9 U.S.C.S. Section 10(a)(2) of the FAA, which allows the trial court to vacate an arbitration award upon the application of any party to the arbitration "where there was evident partiality * * * in the arbitrators * * * or of any other misbehavior by which the rights of any party have been prejudiced[.]" Thus, as stated by the court in *Reno*, *supra*, "these concessions cure any claim of substantive unconscionability." *Id.* at ¶11.

**{¶47}** Last, we turn to the magistrate's finding that the LDA did not provide the Jamisons with any arbitration rules or procedures. In their merit brief, the LDA and Lunardi do not address this specific finding. They merely state that the Jamisons never read the Limited Warranty, never asked any questions, did not seek the advice of counsel before entering into the Agreement, and voluntarily chose to seek arbitration under the Limited Warranty as opposed to the BBB Warranty. The Jamisons assert

11

that, as found by the trial court, the rules to be utilized were not discussed or understood by either party at the time the Agreement was executed in August 2005.

**{¶48}** As previously noted, the arbitration clause in the Limited Warranty provided that the Jamisons could obtain a copy of the applicable rules and procedures upon request. As will be discussed further below, our review of Ohio case law reveals that such terms render the arbitration provision substantively unconscionable. Therefore, even though the arbitration clause at issue is not rendered substantively unconscionable due to the LDA's failure to identify the arbitration organization or advise the Jamisons they were waiving their right to a trial, there are other grounds to support a finding of substantive unconscionability. *See Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Nos. 86990 and 86991, 2006-Ohio-4500, ¶21 (although certain of plaintiff's assertions were insufficient to render the clause unconscionable, he set forth other grounds to support a finding of unconscionability).

**{¶49}** In *Felix, supra*, and *Olah v. Ganley Chevrolet, Inc.,* 8th Dist. No. 86132, 2006-Ohio-694, the Eighth District Court of Appeals addressed language in an arbitration clause stating: "See General Manager for information regarding arbitration process." Hence, similar to the language at issue in the instant case, this phrase directed the buyers to seek information regarding the arbitration process by making a request to the sellers. In both *Felix* and *Olah,* the court reasoned as follows in concluding that the above-referenced language was substantively unconscionable:

**{¶50}** "Because crucial information about the appellate process was not divulged, we find that the arbitration provision by its incompleteness is not only confusing, but misleading and thus substantively conconscionable. Accepting the

12

arbitration clause as written, plaintiffs could not have known what being bound to arbitration really meant. The clause does not include some *very important and material information* plaintiffs would have needed in order to make an informed decision about whether to agree to arbitration. Because of the *absence of any details about the arbitration process that plaintiffs would be bound to,* we conclude that when they signed the purchase agreement plaintiffs were substantially less informed than defendant. The clause, on its face, violates principles of equity. Moreover, the failure of the arbitration provision to divulge certain information could have induced consumers to agree to it." (Emphasis added). *Olah* at ¶26; *Felix* at ¶22. *See also Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138, 1146, 2012 Cal. App. LEXIS 540 (defendant's failure to provide a copy of the relevant arbitration rules with the purchase agreement supported a finding of procedural unconscionability).

**{¶51}** Several years later, in *Wallace v. The Ganley Auto Group*, 8th Dist. No. 95081, 2011-Ohio-2909, the Eighth District addressed the enforceability of the following language in an arbitration provision: "See back of this contract for additional arbitration terms." *Id.* at ¶7. The back of the purchase contract contained several paragraphs that provided information about the arbitration proceedings. *Id.* at ¶8-9. In determining whether this language was substantively unconscionable as plaintiffs contended, the court compared it to the language in *Olah* and *Felix* and concluded that the subject clause:

**{¶52}** "[C]ontains significant additional information regarding arbitration that was not included in the clause at issue in [*Olah and Felix*]. Instead of directing the purchaser to 'see general manger for information regarding arbitration process,' as in

13

*Olah* and *Felix*, the clause appellants signed directed them to four paragraphs on the back of the agreement, which contain specific information about the arbitration process that was missing in *Olah* and *Felix.* In light of this additional information, we do not agree that appellants 'could not have known what being bound to arbitration really meant,' *Olah* at 26, or that they 'were substantially less informed' than Ganley when they signed the arbitration agreement. *Id.*" *Wallace*, at ¶24.

{¶53} Thus, the distinguishing factor in determining whether the arbitration clauses in *Olah*, *Felix,* and *Wallace* were substantively unconscionable was whether the information concerning the arbitration process was contained in the purchase agreement, and therefore, accessible to the plaintiffs so that they were as well-informed as the defendant-seller on the date of purchase. That is not the case in the instant matter. Here, the trial court determined that the Jamisons did not receive a copy of the Limited Warranty until the spring of 2006, several months prior to taking possession of their home, and that neither the Jamisons nor LDA and Lunardi understood the arbitration provision. Furthermore, no information regarding the arbitration process was provided in either the Agreement or the Limited Warranty. As the trial court stated, "the parties did not discuss or identify the arbitration provisions of the builders Limited Warranty at all." Similar to the provision in *Olah* and *Felix*, that information was only available upon request. Accordingly, we agree with the trial court that the language in the subject arbitration clause in the instant case is substantively unconscionable.

{¶54} As previously noted, the test for determining whether an arbitration provision is unconscionable in Ohio requires that there be a finding of both substantive and procedural unconscionability. *Taylor*, 2008-Ohio-938 at ¶33. Based on our

14

disposition of the second assignment of error, we must now address whether the arbitration clause is also procedurally unconscionable before making a definitive determination that the arbitration clause is unconscionable as a whole.

**{¶55}** "'Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible.' *Porpora v. Gatliff Building Co.,* 160 Ohio App.3d 843, 2005-Ohio-2410, at ¶7." *Bayes, supra,* at ¶11. "In order to determine whether or not a contract provision is procedural unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Porpora* at ¶7. In relation to the relative bargaining positions of the parties, the following factors must be considered: "'age, education, intelligence, business acumen and experience (* * *), who drafted the contract, (* * *), whether alterations in the printed terms were possible, (and) whether there were alternative sources of supply for the goods in question.'" *Taylor* at ¶43. Furthermore, "simply showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the unconscionability of the arbitration clause." *Taylor* at ¶45. Procedural unconscionability is not conditional on the existence of any one factor, but instead, is a fact-sensitive question that looks at the surrounding circumstances of each individual case. *Wallace* at ¶44.

**{¶56}** Keeping in mind our standard of review, which requires giving deference to the factual findings of the trial court, for the reasons that follow, we cannot say that

the trial court's determination that the arbitration clause is procedurally unconscionable is incorrect.

**{¶57}** With respect to the factors pertaining to procedural unconscionability, the trial court found as follows:

**{¶58}** That there is a single-spaced arbitration clause located in the Limited Warranty; that the Jamisons did not receive a copy of the Limited Warranty until after the execution of the Agreement, at a time when 98 percent of their new home had already been completed; that neither of the Jamisons had experience with arbitration, negotiating contracts, or new home warranties in general; that they had never had a home built before 1689 Jennifer Lane; and that Lunardi, a seasoned home builder with over 15 years experience, was familiar with arbitration clauses and proceedings, yet did not explain the arbitration provision to the Jamisons. The trial court further found that the Limited Warranty is a pre-printed, 35-page single-spaced form that was drafted by LDA, and that the Jamisons were not represented by counsel at the time they signed the Agreement. Additionally, the trial court found that neither LDA nor Lunardi understood the limits of the claims that could be arbitrated at the time of signing the Agreement, and that the arbitration clause was non-negotiable and could not be modified, i.e., "LDA Builders would not and could not sign the contract without the arbitration clause."

**{¶59}** Accordingly, based on the foregoing, the trial court did not err in concluding that the procedural unconscionability factors weigh in favor of finding the arbitration provision procedurally unconscionable. LDA's and Lunardi's second and third assignments of error are not well-taken.

16

{¶60} In their fourth assignment of error, LDA and Lunardi argue the trial court abused its discretion in determining that both the Magnusson-Moss Warranty Act and the Ohio Consumer Sales Practices Act applied in this case, and that under both acts, this case was not arbitrable.

{¶61} "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). "[A] party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv).

{¶62} In their brief in opposition to the magistrate's decision, as well as in their supplemental brief in opposition, LDA and Lunardi only objected to the magistrate's findings concerning substantive and procedural unconscionability. They did not object to the magistrate's determination that the Jamisons' claims under the Magnusson-Moss Warranty Act and for rescission under the Ohio Consumer Sales Practices Act were not arbitrable. Thus, they have waived their right to present this argument on appeal. *Sanders v. Sanders*, 11th Dist. No. 2011-A-0026, 2012-Ohio-398, ¶41; *Prouse, Dash & Crouch, LLP v. DiMarco*, 8th Dist. No. 96728, 2012-Ohio-12, ¶24-25.

{¶63} LDA's and Lunardi's fourth assignment of error is without merit.

{¶64} In their fifth assignment of error, LDA and Lunardi allege the Federal Arbitration Act requires courts to enforce arbitration agreements because the act preempts state law to the contrary.

17

{¶65} As with their first assignment of error, LDA and Lunardi failed to raise their claim at the trial court level that the Federal Arbitration Act is controlling and mandates arbitration.

{¶66} In any event, we note that "[i]n determining whether the parties formed a valid arbitration agreement, 'state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally, although the [Federal Arbitration Act] preempts "state laws applicable to only arbitration provisions."' *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87, * * * (1996)). 'State law governs "generally applicable contract defenses (to an arbitration clause), such as fraud, duress, or unconscionability."' *Id.* at 889 (quoting *Casarotto, supra*, 517 U.S. at 687)." *Price v. Taylor*, 575 F.Supp.2d 845, 851 (N.D.Ohio 2008).

{¶67} Accordingly, since the Jamisons raised the contract defense of unconscionabilitly, the trial court did not err in applying Ohio law to determine whether the arbitration clause at issue was unconscionable, both substantively and procedurally.

{¶68} LDA's and Lunardi's fifth assignment of error is without merit.

{¶69} For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J., concurs

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

18

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶70} I dissent and would reverse the decision of the lower court as the arbitration clause at issue is not unconscionable. The majority's analysis of the Builder's Limited Warranty fails to maintain the distinction between substantive and procedural unconscionability. Assuming, arguendo, that the arbitration clause contained in the Limited Warranty is unconscionable, the Purchase Agreement contains a binding arbitration provision applicable to disputes arising under the Warranty.

{¶71} "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (Citation omitted.) *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383, 613 N.E.2d 183 (1993). These two aspects of the concept of unconscionability are referred to, respectively, as procedural unconscionability and substantive unconscionability.

{¶72} Procedural unconscionability focuses on the bargaining process by which the terms of the arbitration clause are negotiated and entails the following considerations: "belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." (Citation omitted.) *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 43.

19

**{¶73}** Substantive unconscionability focuses on the terms of the clause and "whether they are commercially reasonable," by considering "the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 33.

**{¶74}** Although the concepts of procedural and substantive unconscionability are distinct, the majority's analysis only considers the procedural unconscionability of the Builder's Limited Warranty arbitration clause.

**{¶75}** In paragraph 57 of the opinion, the majority reviews the factors supporting a finding of procedural unconscionability. The majority notes that the Jamisons were not provided a copy of the Limited Warranty when they signed the New Home Purchase Agreement; the Jamisons were unfamiliar with home construction contracts; the Jamisons were not represented by counsel; neither party understood the extent of the arbitration clause; and the arbitration clause was non-negotiable.[1]

**{¶76}** The majority's discussion of substantive unconscionability in paragraph 52, however, focuses on the same factors as its discussion of procedural unconscionability: "the Jamisons did not receive a copy of the Limited Warranty until the spring of 2006"; "neither the Jamisons nor LDA and Lunardi understood the arbitration provision"; and "no information regarding the arbitration process was provided in either the Agreement or the Limited Warranty." Substantively, there is no difference between the majority's analysis of procedural unconscionability and substantive unconscionability. A court cannot reasonably conclude that an arbitration clause is

---

1. The majority also states that LDA drafted the Limited Warranty. In fact, the Limited Warranty is a standardized form created by the Professional Warranty Service Corporation.

20

substantively unconscionable without discussing the actual terms of the clause. *John R. Davis, Trust 8/12/05 v. Beggs*, 10th Dist. No. 08AP-432, 2008-Ohio-6311, ¶ 13 ("[i]n determining substantive unconscionability, a court must consider the terms of the agreement").

{¶77} Contrary to the majority's finding that no information regarding the arbitration process was provided in the Limited Warranty, the Warranty actually contains several pages describing the process.

{¶78} **Section VII. Binding Arbitration Procedure** of the Limited Warranty provides: "Any disputes between **YOU** and **US** or **OUR** insurer related to or arising from the **BUILDER'S LIMITED WARRANTY** will be resolved by binding arbitration." Thereupon, a non-exhaustive list of "[d]isputes subject to binding arbitration" is set forth.

{¶79} Section VII further provides:

{¶80} Any binding arbitration proceeding will be conducted by an independent arbitration organization designated by **PWC** [Professional Warranty Corporation] or **OUR** insurer. The rules and procedures followed will be those of the designated arbitration organization. A copy of the applicable rules and procedures will be delivered to **YOU** upon request.

{¶81} * * *

{¶82} Binding arbitration shall be the sole remedy for resolving disputes for **YOU** and **US** and **OUR** insurer. The costs and expenses for the arbitration will be paid by **US** or **OUR** insurer except for the Eighty Dollar ($80.00) arbitration filing fee which will be paid by the party

21

requesting arbitration.  If **YOU** request arbitration and **YOU** prevail on any claimed **DEFICIENCY** or **DEFINED STRUCTURAL ELEMENT FAILURE** under the dispute, the Eighty Dollar ($80.00) arbitration filing fee will be refunded to **YOU**.

{¶83}  Section VII then describes the process for initiating arbitration:

{¶84}  Step 1  <u>YOU complete a Binding Arbitration Request Form and mail it together with an Eighty Dollar ($80.00) arbitration filing fee to PWC</u>.  A Binding Arbitration Request Form is attached to this **BUILDER'S LIMITED WARRANTY**.  **YOUR** Binding Arbitration Request Form must be received no later than 90 days after the coverage for the disputed item expires.  * * *

{¶85}  Step 2  <u>**PWC** Will Arrange the Arbitration Proceeding.</u>  The Arbitrator or arbitration organization will notify **YOU** of the time, date and location of the arbitration hearing.  Most often the hearing will be conducted at **YOUR HOME** or some other location that is agreeable to all the parties of the dispute.  In scheduling the hearing the arbitrator will set a time and date that is reasonably convenient to all the parties.

{¶86}  Step 3  <u>The Arbitration Hearing.</u>  The parties at the arbitration hearing will include the arbitrator, **YOU**, **US** and/or **OUR** insurer. After the evidence is presented by **YOU**, **US** or **OUR** insurer, an award will be rendered by the arbitrator.  The award is final and binding on **YOU**, **US** and **OUR** insurer.  The award will include a

ruling on the existence of any claimed or alleged **DEFICIENCIES** or **DEFINED STRUCTURAL ELEMENT FAILURES** as well as any other disputed matters or issues related to this **BUILDER'S LIMITED WARRANTY**.

**{¶87}** Step 4 <u>**OUR** Arbitration Performance Obligations.</u> **WE** will comply with the arbitrator's award no later than 60 days from the date of the award. However, delays caused by circumstances beyond **OUR** or **OUR** insurer's control shall be excused.

**{¶88}** Step 5 <u>If **WE** Fail To Comply With The Award.</u> **YOU** should contact **PWC** at its mailing address specified in this **BUILDER'S LIMITED WARRANTY** if the arbitrator's award is not complied with in a timely manner. **PWC** will then be responsible for contacting the arbitration organization. **PWC** will establish an appropriate process to enforce compliance of the award as provided in the original binding arbitration proceeding.

**{¶89}** There is nothing commercially unreasonable about the terms of the arbitration clause in the Limited Warranty. The arbitration procedure is succinctly set forth and applies to the Jamisons as well as to LDA Builders. The costs for initiating arbitration are minimal. The arbitration is conducted by an independent third party. As the majority opinion notes, the Federal Arbitration Act provides the Jamisons redress if they are dissatisfied with the arbitrator selected. The award must contain an express ruling regarding the claims made under the warranty. Finally, as the magistrate noted in his findings, Lunardi testified that LDA Builders chose this particular Limited Warranty

"because the competition of most of the other builders were using Professional Warranty Corporation and to [compete with other] home builders." The magistrate concluded that "[a]lmost all builders had this type of ten-year structural warranty and impliedly a similar arbitration clause." In the absence of some provision rendering the application of the arbitration clause unfair to the Jamisons, a finding of substantive unconscionability is not supported.

{¶90} Assuming, arguendo, that the arbitration clause in the Limited Warranty is unconscionable, it is also severable. *See* Builder's Limited Warranty, **VIII. General Conditions**, E.2. ("[i]f a court of competent jurisdiction deems any provision of the **BUILDER'S LIMITED WARRANTY** unenforceable, that determination will not effect the remaining provisions"); and *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 12.

{¶91} Apart from the Limited Warranty, the New Home Purchase Agreement contains an equally binding arbitration clause:

{¶92} SELLER, as a member of The Home Builders Association serving [P]ortage and [S]ummit [C]ounties participates in a dispute resolution program through the Better Business Bureau's Pre-commitment to Arbitrate program, a customer assistance program of the Better Business Bureau (BBB). SELLER and BUYER agree to cooperate with BBB efforts to assist in the resolution of any dispute that may arise under this Agreement. SELLER and BUYER hereby agree to mutually binding arbitration of unresolved disputes which may be included in the program. There are limits as to the

24

claims that can be arbitrated - call the BBB at (330) 253-4590 for further information.

{¶93} The BBB arbitration clause contained in the Purchase Agreement suffers from none of the procedural defects of the Limited Warranty arbitration clause. The Jamisons were provided with the means for contacting the BBB regarding the terms of its arbitration program, which are also readily available online. Further, the Jamisons (in their appellate brief) recognize the BBB as "a well-known, respected organization that enjoys a consumer-friendly reputation."

{¶94} The Purchase Agreement arbitration clause is applicable to "any dispute" under the Agreement, and so provides a valid basis for staying the present case pending arbitration. *Ignazio*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, at ¶ 17 ("[s]evering does not alter the fundamental nature of the parties' agreement; the essence of the agreement to arbitrate remains").

{¶95} For the foregoing reasons, I respectfully dissent and would reverse the judgment of the court below.